BEST *v.* STATE

No. 41160 February 16, 1959 108 So. 2d 840

*Pittman & King*, Hattiesburg, for appellant.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

LEE, J.

Fewell Best and another were jointly indicted for the larceny of two cows. After a severance was granted, Best was put on trial and the jury found him guilty as charged but recommended mercy. From a sentence of five years in the state penitentiary, he appealed.

About 7:00 o'clock on Saturday morning, September 28, 1957, Best and Rubert Lee Nicholson appeared at the stockyard of Roy Jeffcoats in the City of Laurel, and sold him two cows. A check in payment was made to Best, who, at the time, had been drinking but Jeffcoats did not think that he was drunk.

Otho Sellers, who lived in the town of Richton, on going out to his farm 7 miles in the country, Sunday afternoon,

found that his loading chute had been torn down, a truck had been in the lane, and two of his cows were missing. On the following Tuesday he went to the stockyard, found his cows, and ascertained that they had been sold the previous Saturday. He saw Best and Nicholson in the custody of the sheriff after his return from the stockyard. When Best was released from jail under bond, he went to Sellers, told him that he did not know what he was doing at the time the cattle were taken, and asked what it would take to make satisfaction. He then went to Jeffcoats, paid to him the amount which had been received as the purchase price, loaded the cows in a truck, and delivered them to Sellers.

Best testified that, for sometime, he had been addicted to the use of liquor; that, when he got under its influence, he would be in bed or the hospital for a week or two or even longer; that, at the time the cattle were taken, he had been on a drunken spree for two or three weeks; that he had no remembrance of having stolen the cows, and had no intention of doing so; that, when he got some information about it afterwards, it was like a dream; that he went to Sellers, told him that he had been drunk and did not know anything about it, and that Sellers gave him the information which he had; that he took a truck, got the cattle from Jeffcoats with an order from Sellers, and carried them back to Sellers; and that Sellers said at the time, "I know if you wasn't drunk you wouldn't have done it for nothing in the world."

Earl Best, an older brother, testified that he had had Fewell in his home and kept him there on several occasions; that it was common to see him drunk, and that "most of the times I did see him he was drunk"; and that the difference between him when he was drunk and when he was sober was as great as the difference between light and dark.

The appellant assigns and argues that the court committed reversible error in giving the following instruc-

tion for the State: ''The court instructs the jury for the State that voluntary intoxication is no defense in this case''; and in refusing the following requested instruction for the defendant: ''The court instructs the jury for the defendant that if you believe from the evidence in this case that the defendant did not intend to steal the cattle identified in the indictment, then it would be your sworn duty to find the defendant not guilty.''

The defense in this case was that Best was so intoxicated at the time of the taking of the catle, that he did not have the specific intent to steal them.

In Edwards v. State, 178 Miss. 696, 174 So. 57, the appellant and three others, drinking whiskey heavily, were in a taxicab. The appellant struck the driver, who either got out or was put out of the car, and drove away. The next morning the taxicab was found near the place where the appellant lived; and an officer found the appellant asleep in bed with his clothes on. The opinion said: ''There was ample evidence for the jury to find that the occupants of the cab, other than the driver, were drinking whisky heavily, and according to the evidence of the appellant himself he was so intoxicated at the time that he did not know what he was doing and had no recollection whatever about it. There is no evidence that he had formed any intention to steal the automobile prior to becoming drunk, and if, while in that condition, he parked the car, went to sleep, and did not wake up until the owner had recovered the automobile, all of which on the evidence was a question for the jury, then he is not guilty of the crime of larceny.'' In pointing out that, in larceny, the specific intent to steal must exist, the opinion cited 1 Bishop Criminal Law, 9 Ed., Section 411, pp. 300-1, as follows: ''So that if one without the intent to steal becomes too drunk to entertain it, and in this condition takes another's goods, and relinquishes them before the intent could arise, or returns them the instant his restored mind has cognizance of the possession of them,

there is no larceny. Since the animus purandi is an essential element of the crime the accused may show as a defense that at the time when he committed the acts which otherwise would constitute larceny he was too drunk to have such an intent." In that case, the court charged the jury for the State that "voluntary drunkenness is no defense to crime." In holding that the giving of this instruction was reversible error, the opinion said that it "erroneously eliminated from the jury any consideration whatever of the appellant's evidence as to his drunkenness— the extent and effect thereof." See also Ewing v. State, (Miss.) 9 So. 2d 879; Young v. State, (Miss.) 18 So. 2d 457; and Hubbard v. State, (Miss.) 41 So. 2d 1.

In Edwards v. State, 207 Miss. 328, 42 So. 2d 230, the appellant there convicted of larceny was the same person as the appellant in Edwards v. State, supra. The opinion, in affirming the conviction, pointed out that, in the first Edwards case, the reversible error was charging the jury that "voluntary drunkenness is no defense to crime", whereas in the latter appeal, the appellant was given an instruction which embodied his entire theory of defense. In other words, the error in the first case did not exist in the second case.

██ █ The State instruction, complained of above, should have been refused. and the refused defense instruction should have been given.

The appellant also finds fault with the giving or refusal of several other instructions, but, in view of what has already been said, these questions should not arise in another trial. For the errors stated, the cause is reversed and remanded for a new trial.

Reversed and remanded.

*Roberds, P. J.,* and *Hall, Holmes,* and *Ethridge, JJ.,* concur.