# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00507-SCT

*AARON GREENLEE*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 3/26/97 |
| TRIAL JUDGE: | HON. R. I. PRICHARD, III |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WILLIAM L. DUCKER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | RICHARD DOUGLASS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 6/18/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 8/27/98 |

**BEFORE SULLIVAN, P.J., ROBERTS AND WALLER, JJ.**

**ROBERTS, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Aaron Greenlee, appeals from the circuit court of Lamar County where he was indicted for murder of his mother, Shelia Greenlee, in violation of Miss. Code Ann. § 97-3-19(1)(a). After two days of motion hearings before the Lamar County Circuit Court, Judge R.I. Prichard, III presiding, the case proceeded to trial where after three days of testimony, Greenlee was found guilty of murder. The trial court sentenced him to serve a term of life in the custody of the Mississippi Department of Corrections. After denial of post-trial motions, Greenlee filed a timely Notice of Appeal raising the following issues:

> **I. WHETHER THE CIRCUIT COURT ERRED IN ALLOWING THE STATE OF MISSISSIPPI TO MAKE A SUBSTANTIVE AMENDMENT TO THE INDICTMENT WITHOUT RECALLING THE GRAND JURY SO THAT THE AMENDED INDICTMENT WOULD COMPORT WITH THE PREREQUISITES OF MISS. CODE ANN. § 97-3-19(1)(A)?**

**II. WHETHER THE CIRCUIT COURT ERRED IN REFUSING TO GRANT DEFENSE INSTRUCTION D-12?**

**III. WHETHER THE CIRCUIT COURT ERRED IN REFUSING THE DEFENSE MOTION FOR MISTRIAL WHEN THE JURY DELIBERATING AFTER TWO HOURS AND FORTY MINUTES SENT A NOTE TO THE COURT SAYING THEY COULD NOT REACH A DECISION?**

**IV. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING GREENLEE'S ORAL STATEMENT MADE TO CORPORAL MICHAEL HAMILTON OF THE ORANGE BEACH, ALABAMA, POLICE DEPARTMENT?**

**V. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING GREENLEE'S WRITTEN STATEMENT GIVEN TO INVESTIGATOR RICK ROUSE OF THE ORANGE BEACH, ALABAMA, POLICE DEPARTMENT?**

**VI. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING GREENLEE'S STATEMENT TAKEN BY INVESTIGATOR DAVID BULLOCK OF THE LAMAR COUNTY SHERIFF'S DEPARTMENT?**

## STATEMENT OF THE FACTS

¶2. On May 17, 1996, Aaron Greenlee (hereinafter "Greenlee") was at his home in Lamar County with his mother, Shelia Greenlee. He asked his mother about using the family van to go to the fair with some of his friends. This discussion quickly turned into an argument which resulted in his mother denying his request to go to the fair. She told him to go to his room, which he did. Enough time passed for Shelia to fall asleep on the couch in the living room. Greenlee alleges that it was at this time that he took three hits of LSD. However, it is important to note that he never explained to the officers investigating the crime that he had taken LSD. This fact was brought up for the first time at the trial. Afterwards, Greenlee went to his mother's bedroom to retrieve his 30-30 rifle. He took the gun to his room and loaded it with two bullets. He walked into the den where his mother was sleeping and aimed the rifle at the top of his mother's head. He fired the rifle into her head, killing his mother.

¶3. Shortly thereafter, Greenlee took the family van and began driving to Florida. At some point he fell asleep at the wheel of the car and was involved in an accident at Wind Drift condominiums in Orange Beach, Alabama. Greenlee had run the van off the road and struck the flower bed and kept going about another 250 feet. The police were notified and arrived on the scene. During the suppression hearing, Officer Aaron Wyatt testified that he was the first officer to arrive. He testified that he called in the tag number then approached the van. It was at this time that Greenlee stepped out from the backseat of the van. Officer Wyatt asked Greenlee a few routine investigatory questions such as his age, what had happened back at the condominiums, and whether he was alone. At this particular point in time, the dispatcher radioed back in 10-0, use caution, suspect possibly involved in a homicide. Officer Wyatt asked Greenlee to put his hands on the van and he began to pat Greenlee down for a weapons search. However, Greenlee was neither arrested nor handcuffed. Officer Wyatt further testified that Greenlee did not appear drunk or on drugs of any kind.

¶4. At the suppression hearing, Corporal Hamilton testified that he received a report on a traffic accident around 1:40 a.m. from Ono Island Security. He stated that he proceeded to the area to see if he could locate the vehicle that had been involved in the accident. On the way to the scene, Corporal Hamilton received a dispatch that the vehicle was possibly occupied by a white juvenile male that was wanted in connection with a homicide from Lamar County, Mississippi. When Corporal Hamilton arrived at the scene he got out of his patrol car and went to assist Officer Wyatt. He patted Greenlee down to see if there were any weapons on him and asked him for his name and date of birth. Corporal Hamilton radioed the information in and the dispatcher responded that Greenlee was a suspect in a homicide. Corporal Hamilton handcuffed Greenlee and walked him back to seat him in the rear seat of his patrol car, placing him in custody. Corporal Hamilton further testified that it was at this point that he asked Greenlee where he was staying or where his parents might be. He stated that this was standard question when taking a juvenile into custody. Greenlee responded to Corporal Hamilton's question by stating, "My mom pissed me off and I shot her." Corporal Hamilton then asked Greenlee if he had any guns in the van, to which Greenlee responded, "I put the gun back in my bedroom." It was at this point that Corporal Hamilton told Greenlee not to make any more statements concerning the incident, that all he wanted to know was if he had any guns in the van. Greenlee responded that he did not. Corporal Hamilton then left the scene and took Greenlee to the police station. Corporal Hamilton further testified that he did not question Greenlee any further as to the incident and that the questions asked were investigatory and not an interrogation. When they arrived at the police station, Corporal Hamilton handed Greenlee over to Investigator Rouse. Corporal Hamilton also testified that Greenlee did not appear to be under the influence of alcohol or drugs.

¶5. Investigator Rouse testified that on the morning of May 18th, he advised Greenlee of his Miranda rights by way of reading a form document that is used particularly when there is a juvenile in custody. He further stated that Sergeant Dodd was present during this time. Investigator Rouse testified that during this time, Greenlee appeared alert, attentive and did not seem to be under the influence of alcohol or drugs. Rouse stated that he fully went over the waiver of rights contained at the bottom of the form and asked if Greenlee understood everything. Greenlee responded that he did. Greenlee further stated that he was willing to talk to Rouse and signed the waiver. The oral interview began at 2:25 a.m. and concluded at 2:31 a.m. on the 18th of May, 1996. The reading and explaining of rights and Greenlee's waiver of these rights was recorded on tape. At 2:47, Rouse went over a written statement that Greenlee wrote in his own words and hand-writing. There was a second recorded oral interview from 2:49 until 2:54. Before this second oral statement was given, Rouse asked Greenlee if he still understood his rights and was willing to answer questions. Greenlee replied, "Yes."

¶6. Investigator Bullock and Officer Steve Reid, who were both with the Lamar County Sheriff's Department, went to Orange Beach, Alabama to get Greenlee. They arrived at the police station around 8:00 a.m. Corporal Hamilton informed them of the accident that had occurred, where the accident was, and the statement that Greenlee had given him. It was at this time that Greenlee was brought into the office with Bullock. Bullock gave Greenlee his Miranda warnings and told him he wanted to talk to him about what had happened at his residence. Bullock went over a standard form with Greenlee and Greenlee signed the waiver. Greenlee explained his story of what happened the day before at his home. Bullock repeated the statement to Greenlee and asked him if that was the way it happened. Greenlee agreed and Bullock put the statement in writing and read it back to

Greenlee. Greenlee read the statement and then signed it. The trial court noted at trial that Bullock had marked a line through "Lamar County Sheriff's Department" and put "Orange Beach Police Department" at some time subsequent to May 18, 1996. However, the trial court stated that the alteration made was not a material one.

¶7. After interviewing Greenlee, Bullock was advised that he would have to go before a magistrate to have extradition waived so that Greenlee could go back to Mississippi. After processing was completed, Bullock and Officer Weir brought Greenlee back to Lamar County Sheriff's Office where he would remain until trial. Before leaving Orange Beach, Alabama, Bullock was provided with an accident report and the statements that Greenlee had given and a copy of the tape on which his statements were recorded.

## DISCUSSION OF THE ISSUES

### I. WHETHER THE CIRCUIT COURT ERRED IN ALLOWING THE STATE OF MISSISSIPPI TO MAKE A SUBSTANTIVE AMENDMENT TO THE INDICTMENT WITHOUT RECALLING THE GRAND JURY SO THAT THE AMENDED INDICTMENT WOULD COMPORT WITH THE PREREQUISITES OF MISS. CODE ANN. § 97-3-19(1)(A)?

¶8. Greenlee asserts in his first assignment of error that the original indictment was so general in scope that he was not put on notice as to what charge he had to defend, murder or capital murder. Greenlee further argues that the circuit court erred by allowing the State to improperly amend the indictment depriving him of his defense. The heading of the original indictment says MURDER SECTION 97-3-19 and reads in part as follows:

> AARON GREENLEE did willfully, unlawfully, feloniously, without authority of law and of his malice aforethought, kill and murder one Shelia Greenlee, a human being, contrary to and in violation of Section 97-3-19 of the Mississippi Code of 1972, as amended . . . .

Greenlee argues that this indictment did not specify as to whether he was charged with murder or capital murder. He also states that the indictment charges him with "malice aforethought" which no longer exists as an element in the State of Mississippi.

¶9. Furthermore, Greenlee asserts that allowing the amendment to more clearly delineate with specificity the crime charged was one of substance and was prejudicial to his defense. The amended indictment reads in part as follows:

> Aaron Greenlee did wilfully, unlawfully, feloniously, without authority of law and by deliberate design to effect the death of the person killed, or of any human being, and the defendant did shoot, kill and murder one Shelia Greenlee, a human being, by shooting her with a rifle, contrary to and in violation of Section 97-3-19(1)(a) of the Mississippi Code of 1972, as amended; against the peace and dignity of the State of Mississippi.

¶10. It is true that an indictment may not be amended to change the nature of the charge, except by action of the grand jury which returned the indictment. *Akins v. State*, 493 So.2d 1321, 1322 (Miss. 1986) (*citing Jones v. State*, 279 So.2d 650, 651 (Miss. 1973)). However, it is permissible to amend

an indictment if the amendment is one of form and not of substance. ***Rhymes v. State***, 638 So.2d 1270, 1275 (Miss. 1994).

> It is well settled in this state . . . that a change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case.

***Wilson v. State***, 574 So.2d 1324, 1333 (Miss. 1990) (*quoting **Ellis v. State***, 469 So.2d 1256, 1258 (Miss. 1985) ( *quoting **Shelby v. State***, 246 So.2d 543, 546 (Miss. 1971))). The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made. ***Griffin v. State***, 584 So.2d 1274, 1276 (Miss. 1991).

¶11. If Section 97-3-19 is read in its entirety, there is no way that the original indictment can be construed as charging capital murder under the terms and definitions as contained in (2)(a), (b), (c), (d), (e), (f) and (g). The indictment in the case sub judice, as originally submitted, was legally sufficient to charge Greenlee with murder as "malice aforethought" and "deliberate design" are synonymous. ***Tran v. State***, 681 So.2d 514, 517 (Miss. 1996). Therefore, the indictment as written was sufficient to give Greenlee fair notice of the crime charged in clear and intelligible language-- murder. ***Bell v. State***, 360 So.2d 1206, 1209 (Miss. 1978).

¶12. Rule 7.06 does require a plain, concise and definite written statement of the essential facts of the crime charged. U.RC.C.C. 7.06. Obviously, in the case sub judice the original indictment did not include facts as to how the murder happened, but it did contain facts of where the murder took place, when the murder took place, who was murdered, and who committed the murder. Because the original indictment adequately charged Greenlee with murder, the amendment including the statutory language of 97-3-19(1)(a) and the facts being added concerning the weapon were amendments as to form and not of substance. The amendment of the indictment in this case had the same result as if the original indictment had stood. Greenlee's defense was equally available with the additional facts provided in the amended indictment. ***Eakes v. State***, 665 So.2d 852, 860 (Miss. 1995). Therefore, even with the indictment in its present language, we believe that the trial court was correct in its finding that Greenlee was properly apprised of the charge pending against him and that the amendment did afford Greenlee a fair opportunity to present a defense in this case. As such, Greenlee's first assignment of error is without merit.

## II. WHETHER THE CIRCUIT COURT ERRED IN REFUSING TO GRANT DEFENSE INSTRUCTION D-12?

¶13. In this next allegation of error, Greenlee claims that it was error for the trial court to refuse a manslaughter instruction. He cites to the trial court's refusal of his proffered instruction D-12 which reads as follows:

> If the evidence warrants it, you may find the defendant guilty of manslaughter, a crime lesser than murder. However, notwithstanding this right, it is your duty to accept the law as given to you by the Court, and if the facts and the law warrant a conviction of the crime of murder, then it is your duty to make such finding uninfluenced by your power to find a lesser offense. This

provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge but does justify a verdict for the lesser crime.

Greenlee submits that while voluntary intoxication is not a defense to the crime of murder, the fact that the defendant was intoxicated negates the existence of the specific intent to commit the offense. *Kendall v. State*, 244 Miss. 618, 623, 145 So.2d 924, 927 (1962). Thus, Greenlee concludes that because he had taken three hits of LSD before the offense, he did not have the specific intent to commit murder. For this reason, Greenlee argues that the drug induced state he was in reduced murder to manslaughter and, therefore, he should have at least been granted the instruction so that this question could go to the jury. *Best v. State*, 235 Miss. 318, 108 So.2d 840 (1959). However, this argument is tantamount to a request for the jury to consider Greenlee's intoxication as a defense to the specific intent crime of murder. In *McDaniel v. State*, 356 So.2d 1151 (Miss. 1978), this Court overruled this argument which had previously been successful. The Court stated:

> If a defendant , when sober, is capable of distinguishing between right and wrong, and the defendant voluntarily deprives himself of the ability to distinguish between right and wrong by reason of becoming intoxicated and commits an offense while in that condition, he is criminally responsible for such acts.

*McDaniel v. State*, 356 So.2d at 1161.

¶14. Furthermore, when determining whether a lesser-included instruction should be submitted to the jury, this Court has developed a test.

> [A] lesser included offense instruction should be granted unless the trial judge--and ultimately this Court--can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).

*Harper v. State,* 478 So.2d 1017, 1021 (Miss. 1985). "The evidence must warrant an instruction on the lesser-included offense before it can be granted." *Graham v. State*, 582 So.2d 1014, 1017 (Miss. 1991) (*citing Stevens v. State*, 458 So.2d 726, 731 (Miss. 1984)).

¶15. The manslaughter instruction requested by Greenlee would have presented to the jury the affirmative proposition that Greenlee's actions were without "malice aforethought" or "deliberate design" and presumably in the heat of passion. The State argues and this Court agrees that there is no evidence in the record from which a rational jury could conclude that Greenlee's actions constituted manslaughter, particularly in view of this Court's established rule that voluntary intoxication is no defense in a criminal prosecution. *Fairchild v. State*, 459 So.2d 793, 801 (Miss. 1984) (*citing Hall v. State*, 427 So.2d 957, 961-62 (Miss. 1983); *McDaniel v. State*, 356 So.2d 1151, 1153-54 (Miss. 1978)). In the present case, Shelia Greenlee was asleep when her son shot her in the head. Thus, even if there was an argument between Greenlee and his mother, enough time had passed for him to go to his room, to allegedly take three hits of acid, the drugs to take effect, walk into his mother's room to retrieve his gun, walk back to his room, load the gun with two bullets, walk into the living room where sufficient time had passed for his mother to fall asleep, aim the gun at her head and shoot. The

jury could only have returned a verdict of manslaughter by finding affirmatively that Greenlee acted without deliberate design and in the heat of passion, matters with respect to which there was no evidentiary basis in the record. "Such matters may not be inferred." **Fairchild**, 459 So.2d at 802.

¶16. Upon reviewing the evidence in this case, it is clear to this Court that the manslaughter instruction which was tendered by Greenlee should not have been given. There is simply no evidence in the case--offered by the State or by the defense--which would change the character of the killing so that a reasonable jury could affirmatively find that the killing of Shelia Greenlee was manslaughter. The trial judge did not commit error in refusing to submit this instruction to the jury. Therefore, this assignment of error is without merit.

### III. WHETHER THE CIRCUIT COURT ERRED IN REFUSING THE DEFENSE MOTION FOR MISTRIAL WHEN THE JURY DELIBERATING AFTER TWO HOURS AND FORTY MINUTES SENT A NOTE TO THE COURT SAYING THEY COULD NOT REACH A DECISION?

¶17. Greenlee next asserts that the trial court erred in not granting his motion for a mistrial. Specifically, he is arguing that the judge's reading of the model jury instruction and the deliberation time was coercive. After two hours and forty minutes of deliberation, the jury sent a note out with the foreman that it could not come to a decision at that point in time. In the note, it was indicated that there were eleven guilty votes and one not guilty. The trial court decided to give the jury a jury instruction out of the model jury instructions which read as follows:

> I know that it is possible for honest men and women to have honest different opinions about the facts of the case, but if it is possible to reconcile your differences of opinion and decide this case, then you should do so. Accordingly, I remind you that the court originally instructed you that the verdict of the jury must represent the considered judgment of each juror. It is your duty as jurors to consult with one another and to deliberate in view of reaching an agreement, if you can do so without violence to your individual judgment. Each of you must decide the case for yourself but only after an impartial consideration of the evidence with your fellow jurors. In the course of your deliberations, do not hesitate to re-examine your own views and change your opinion if you're convinced it is erroneous. But do not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. Please continue your deliberations.

After giving the instruction, the trial court informed the jurors that they could order food or whatever they needed for their comfort. There was no further communication from the jury and it returned with a guilty verdict in less than thirty minutes. Greenlee argues that by the trial judge re-instructing the jury, the one juror who voted not guilty was placed under too much pressure to hold onto his or her convictions. Greenlee believes that this, along with the trial court's disregard for the note from the jury, violated his right to a fair trial and violated the due process guarantee of the Fourteenth Amendment to the United States Constitution and article III, Section 14 of the Mississippi Constitution of 1890.

¶18. This Court has acknowledged that "[i]t is within the sound discretion of the trial judge as to how long he will keep the jury in deliberation, and this discretion will not be reviewed on appeal unless there has been a clear abuse of discretion." **Dixon v. State**, 306 So.2d 302, 304 (Miss. 1975)

(*quoting Gordon v. State*, 149 So.2d 475, 477 (Miss. 1963)). "The object of the jury system is to secure a verdict by a comparison of views and by agreements among the jurors themselves. Although the verdict of the jury should represent the opinion of each individual juror, it does not follow that opinions of jurors may not be changed by conference with each other in the jury room." *Sharplin v. State*, 330 So.2d 591, 596 (Miss. 1976). Consequently, if the trial judge feels that there is a possibility that the jury might reach a verdict, he may return the jury for further deliberations by simply stating to the jury to please continue its deliberations or he may give the instruction that was given in the case sub judice. *Sharplin*, 330 So.2d at 596. This Court has adamantly approved of the foregoing instruction and has held that it may be given in either criminal or civil cases when the trial judge is confronted with a hung jury. *Brantley v. State*, 610 So.2d 1139, 1142 (Miss. 1992).

¶19. The length of time the jury deliberated was not coercive or unduly wearing on the jury. The jury deliberated a total of less than three and one-half hours. This is within the reasonable limits as previously noted by this Court. *Robinson v. State*, 418 So.2d 794, 797 (Miss. 1982) (Four hours deliberation not excessive); *Isom v. State*, 481 So.2d 820, 824 (Miss. 1985) (Eight hours suggested as excessive deliberation time; reversed on grounds of improper charge to jury). Furthermore, the trial court did not abuse its discretion in its handling of this matter by its reading of a *Sharplin* instruction. Thus, Greenlee's third assignment of error is without merit.

### IV. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING GREENLEE'S ORAL STATEMENT MADE TO CORPORAL MICHAEL HAMILTON OF THE ORANGE BEACH, ALABAMA, POLICE DEPARTMENT?

### V. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING GREENLEE'S WRITTEN STATEMENT GIVEN TO INVESTIGATOR RICK ROUSE OF THE ORANGE BEACH, ALABAMA, POLICE DEPARTMENT?

### VI. WHETHER THE CIRCUIT COURT ERRED IN ADMITTING GREENLEE'S STATEMENT TAKEN BY INVESTIGATOR DAVID BULLOCK OF THE LAMAR COUNTY SHERIFF'S DEPARTMENT?

¶20. As Greenlee's last three arguments all deal with the suppression of statements, we have decided to address these issues simultaneously.

¶21. Greenlee contends that based on the facts brought out during his Motion to Suppress hearings, his statements for various reasons were not freely and voluntarily given and should have been suppressed. When the circuit court expressly or implicitly resolves the issue of admissibility of a confession against a defendant, this Court's scope of review is confined to established limits. *Morgan v. State*, 681 So.2d 82, 87 (Miss. 1996). This Court has held that, "[w]here the trial court has overruled a motion to suppress the confession of a defendant, this Court will reverse the trial court's decision only if the trial court's ruling 'is manifestly in error or contrary to the overwhelming weight of the evidence.'" *McGowan v. State*, 706 So.2d 231, 235 (Miss. 1997)(*quoting White v. State*, 495 So.2d 1346, 1347 (Miss. 1986) ( *quoting Cabello v. State*, 490 So.2d 852, 856 (Miss. 1986))). In other words, if a trial court finds that a confession was voluntary and is admissible, this Court will not reverse as long as the trial court applies the correct principles of law and the finding is factually supported by the evidence. *Haymer v. State*, 613 So.2d 837, 839 (Miss. 1993) (*quoting Cox v. State*, 586 So.2d 761, 763 (Miss. 1991)).

## A. Oral Statement to Corporal Hamilton

¶22. Greenlee asserts that his oral statement to Corporal Hamilton which was made at the traffic accident scene was not voluntary given. He believes that being placed in the back of a police car in handcuffs was "custody" and entitled him to have his constitutional rights read to him before questioning. After being placed in the police car, Corporal Hamilton asked Greenlee, ". . . where he was staying at and where his parents were." Thus, he argues that his response, "My mom pissed me off and I shot her," is a fruit of a wrongful interrogation and a violation of the Fifth Amendment to the United States Constitution and article III, Section 26 of the Mississippi Constitution of 1890.

¶23. Whether Greenlee's Miranda rights were violated depends on whether he was in custody and being interrogated. **Hunt v. State**, 687 So.2d 1154, 1159 (Miss. 1996). A person's Miranda rights are not triggered by general on the scene questioning and/or any voluntary statement. **Hunt**, 687 So.2d at 1159 ( *citing* [**Miranda v. Arizona**, 384 U.S. 436, 477-78 (1966)](#)). In the case sub judice, the record does not indicate that Corporal Hamilton's question was asked for the purpose of eliciting an incriminating statement from Greenlee. **Wilson v. State**, 574 So.2d 1324, 1330 (Miss. 1990). It was merely a routine investigatory question asked in Alabama when a juvenile is taken into custody. "'[T] he mere possibility of incrimination does not mean that an interrogation occurred.'" **Wilson**, 574 So.2d at 1330 (*quoting* **Woodward v. State**, 533 So.2d 418, 430 (Miss. 1988)).

¶24. Although Greenlee made the inculpatory statement while in custody, he did not make it in response to custodial interrogation or any police action designed to elicit an incriminating response. **Pierre v. State**, 607 So.2d 43, 52 (Miss. 1992). The Fifth Amendment did not impose on the trial court any need to ascertain voluntariness, knowledge, and intelligence of waiver. **Pierre**, 607 So.2d at 52. Under such circumstances, where there was no interrogation, Miranda warnings were not a prerequisite to the admissibility of Greenlee's statements. **Luster v. State**, 515 So.2d 1177, 1179 (Miss. 1987). On this basis alone this assignment of error is without merit.

## B. Written Statement to Investigator Rouse

¶25. Greenlee also argues that the written statement given to Investigator Rouse at the Orange Beach Police Department was not voluntarily given. He asserts that because he was only fifteen and very tired, he could not give a voluntary waiver of his Miranda rights. As such, the trial court erred by not suppressing this written statement.

¶26. "The applicable standard for determining whether a confession is voluntary is whether, taking into consideration the totality of the circumstances, the statement is the product of the accused's free and rational choice." **Porter v. State**, 616 So.2d 899, 907-08 (Miss. 1993) (*citing* **United States v. Rogers**, 906 F.2d 189, 190 (5th Cir. 1990)). The prosecution has the burden of proving beyond a reasonable doubt that the confession was voluntary. **Haymer v. State**, 613 So.2d 837, 839 (Miss. 1993). This "'burden is met and a prima facie case made out by testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without threats, coercion, or offer of reward.'" **Chase v. State**, 645 So.2d 829, 838 (Miss. 1994) (*quoting* **Cox v. State**, 586 So.2d 761, 763 (Miss. 1991)). The defendant will then offer testimony of inducement. **Stokes v. State**, 548 So.2d 118, 121 (Miss. 1989). "'Once the trial judge has determined at a preliminary hearing, that a confession is admissible, the defendant/appellant has a heavy burden in

attempting to reverse that decision on appeal.'" ***Hunt v. State***, 687 So.2d 1154, 1160 (Miss. 1996) (*quoting* ***Sills v. State***, 634 So.2d 124, 126 (Miss. 1994)).

¶27. The State argues that there was no evidence of an involuntary statement being given, and the trial judge's hearing on the motion to suppress was not error. The State also points out that after Greenlee was read his Miranda warnings by Investigator Rouse, he signed the waiver of rights form and voluntarily confessed to killing his mother. It is important to note that Investigator Rouse's testimony during the suppression hearing verifies that Greenlee was willing to talk to Rouse about the crime. Investigator Rouse also testified that during this time, Greenlee appeared alert, attentive and did not seem to be under the influence of alcohol or drugs. In addition, these facts were supported by Sergeant Dodd's testimony during the suppression hearing that he was a witness to Greenlee being read his Miranda warnings and his waiver of rights. Dodd further states that Greenlee stated he understood his rights and he witnessed Greenlee sign the waiver of rights. Both officers testified that no promises of leniency, threats, or coercive measures were exerted against McGowan.

¶28. According to ***Cox v. State***, where the State has laid the "proper predicate," the onus is then on the defendant to provide other evidence or testimony on the voluntariness issue to rebut the State's assertion. ***Cox v. State***, 586 So.2d 761, 764 (Miss. 1991). Greenlee failed to provide other evidence or testimony to rebut the State's predicate that the confession was voluntary. In fact, Greenlee's testimony at the suppression hearings contradicts most of the arguments his counsel presents on appeal. Greenlee testified that he remembered all of his statements to the police. He stated that he was not under the influence of drugs. He stated that he gave the taped and written statements willingly. He admitted he was given his rights. He stated that he did not ask for an attorney although he understood that he had a right to meet with one. He also stated that the police did not misunderstand or misinterpret what he said in the interview. After hearing all of the testimony at the suppression hearing and weighing such, the trial judge found the statement voluntary.

¶29. When the trial judge follows the correct legal standards to determine the admissibility of the contents of a confession, and there is substantial evidence to support the finding of voluntariness, this Court will not disturb the trial judge's findings. ***Alexander v. State***, 610 So.2d 320, 326 (Miss. 1992). There is no merit to this assignment of error.

### C. Written Statement to Investigator Bullock

¶30. The standard of review when considering the admissibility of a written confession is discussed at length in Section B, and as such will not be repeated here. However, we feel that the alteration made to the written confession given to Investigator Bullock and the facts surrounding Greenlee's interview must be discussed.

¶31. At Greenlee's trial and presently on appeal, Greenlee argues that the written statement taken by Investigator Bullock was materially altered and should have been taken out of evidence. The trial judge noted that the only change made to the written statement was that the words "Lamar County Sheriff's Department" were lined through. In its place, Investigator Bullock wrote the words "Orange Beach Police Department." The trial judge allowed the defense to voir dire Investigator Bullock to determine why the alteration was made. Investigator Bullock testified that he made this change because he interviewed Greenlee at the Orange Beach Police Department rather than in Lamar County. Bullock also testified that there was nothing else about the statement that he changed, added

to or altered. The trial judge ruled that the alteration of the statement was not a material alteration and, thus, should be admissible. He stated that the defense could cross-examine Investigator Bullock and would be entitled to a jury instruction as to the credibility of the statement and any of Bullock's testimony.

¶32. As previously stated, the determination on the voluntariness of a confession is essentially a fact-finding function. ***Morgan v. State***, 681 So.2d 82, 87 (Miss. 1996). So long as the court applies the correct legal standards, this Court will not overturn a finding of fact made by a trial judge unless it be clearly erroneous. ***Morgan***, 681 So.2d at 87. Therefore, the determination of the trial judge must necessarily be given great weight. ***McGowan v. State***, 706 So.2d 231, 236 (Miss. 1997). The trial court was correct in ruling that the alteration was not material and as such this argument is without merit.

¶33. Furthermore, considering the totality of the circumstances, the record reflects that Greenlee's statement to Bullock was voluntary and freely given. Greenlee was questioned the morning after the crime occurred. Greenlee was given his Miranda warnings and waiver of rights and then signed the waiver form. Greenlee explained his story of what happened the day before. Bullock repeated the story to Greenlee and asked if that was the way it happened. Greenlee agreed and Bullock put the statement in writing and read it back to Greenlee. Greenlee also read the statement himself and then signed it, acknowledging that it was correct.

¶34. Considering Bullock's testimony regarding these facts and the testimony of Officer Reed, who was a witness to the interview between Bullock and Greenlee, the trial judge's admission of Greenlee's statement to Bullock was not manifest error or contrary to the overwhelming weight of the evidence. ***Hunt v. State***, 687 So.2d 1154, 1160 (Miss. 1996). Greenlee put on no other evidence or testimony on the voluntariness issue to rebut the State's assertion that the statement was admissible. ***Cox v. State***, 586 So.2d 761, 764 (Miss. 1991). Based on the foregoing analysis, the trial judge's admission of Greenlee's statement must be affirmed. Thus, Greenlee's last issue is without merit.

## CONCLUSION

¶35. We find that the assignments of error presented by Greenlee are without merit. Specifically, this Court believes that: (1) the original indictment contained adequate language to put Greenlee on notice that he was charged with murder and the amendment to the original indictment was one of form and not of substance, thus affording Greenlee a fair opportunity to present a defense in his case; (2) the manslaughter instruction was properly refused considering that there was no evidence in the record from which a rational jury could conclude that his actions constituted manslaughter; (3) the trial judge properly used a ***Sharpin*** instruction after receiving a note from the jury that it was deadlocked which asked the jury to continue its deliberation; (4) the trial judge properly admitted oral and written statements made by Greenlee. As a result, finding that the trial court did not commit reversible error, this Court affirms Greenlee's conviction and sentence.

¶36. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH CONDITIONS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, McRAE, SMITH, MILLS AND WALLER, JJ., CONCUR.**