# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-01221-SCT

*JOSHUA CHARLES MILLER*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/02/1997 |
| TRIAL JUDGE: | HON. MICHAEL RAY EUBANKS |
| COURT FROM WHICH APPEALED: | LAMAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | LESLIE D. ROUSSELL |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | RICHARD LAWRENCE DOUGLASS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/06/1999 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/27/99 |

**BEFORE PRATHER, C.J., SMITH AND WALLER, JJ.**

**WALLER, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. This appeal arose from a conviction in the Lamar County Circuit Court. Appellant Joshua Charles Miller was charged with the murder of Kristin Aultman. Miller, a fourteen-year-old boy, had an on-again, off-again romantic relationship with Aultman, a thirteen-year-old girl. On August 18, 1996, Miller shot and killed Aultman with a twelve-gauge shotgun. The trial was moved to Canton because of undue publicity in Lamar County. A Madison County jury found Miller guilty of murder. He was sentenced to life in prison. Miller now appeals, listing the following five assignments of error:

> **I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE STATE OF MISSISSIPPI TO MAKE A SUBSTANTIVE AMENDMENT TO THE INDICTMENT HEREIN WITHOUT FURTHER ACTION OF THE GRAND JURY**

> **II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO INSTRUCT THE JURY ON THE DEFINITION OF DELIBERATE**

**DESIGN WHEN ASKED TO DO SO BY THE DEFENDANT**

**III. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE STATE OF MISSISSIPPI TO INTRODUCE A PICTURE OF THE VICTIM'S BODY AS IT LAY AT THE CRIME SCENE EVEN THOUGH THERE WAS NO DISPUTE AS TO THE CAUSE OF DEATH, THE PLACE AND TIME OF DEATH, THE NAME OF THE DECEDENT, AND AT WHOSE HANDS SHE DIED. FURTHERMORE, WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE STATE OF MISSISSIPPI TO INTRODUCE INTO EVIDENCE A PRE-DEATH PHOTO OF THE THIRTEEN YEAR OLD VICTIM IN HER CHEERLEADER UNIFORM**

**IV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO REMAND THIS CASE TO YOUTH COURT, AND WHETHER OR NOT THE MISSISSIPPI YOUTH COURT ACT VIOLATES THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE MISSISSIPPI AND UNITED STATES CONSTITUTIONS**

**V. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO SUPPRESS STATEMENTS MADE BY THE DEFENDANT HEREIN**

## FACTS OF THE CASE

¶2. On the day of the shooting, August 18, 1996, Miller was concerned because Aultman had rejected him. After discussing his problem with Elliot Smith, a classmate and friend, Miller went to the Oloh Baptist Church in Lamar County, Mississippi, to see Aultman, but there were a lot of people around so he left. He came back before church started and asked her to talk with him outside. When the two walked outside, Miller sat on the side of his van and talked with her. When Aultman told Miller she did not want to see him anymore, Miller retrieved the shotgun from his van and shot Aultman in the head, immediately causing death. Miller stated he only intended to scare Aultman with the shotgun, but was startled by children playing in the churchyard.

¶3. After he shot Aultman, Miller was scared and sped away in his van toward a friend's house. Miller wrecked the van and got out to meet his friend. After telling his friend he had killed Aultman, Miller walked back toward the church.

¶4. As he was walking back, Miller met two officers on the road. Officers Terry Roseberry and L.W. Warden saw Miller coming toward them and ordered him to stop and put his hands up. Roseberry asked if he was Josh Miller. Roseberry stated Miller responded by saying, "Yes, I am the one who shot her." Roseberry placed Miller under arrest. As he was putting Miller under arrest, Roseberry said "you are under arrest." Miller then said "Yes, I know because I shot her." Roseberry told Miller not to make any further statements.

¶5. The officers took Miller to the Lamar County Jail and placed him in the booking room to await interrogation by an investigator. After being alone in the booking room for about ten to fifteen minutes, Miller sent word to Officer Roseberry that he needed to see him. When Roseberry went to the booking room to speak with Miller, Miller handed Roseberry a note and said, "You need this." According to

Roseberry, Miller must have written the note before he was arrested, because Miller did not have the opportunity or the materials to write the note once he was taken into custody. Miller stated he wrote the note while he was in the booking room waiting to be interrogated.

¶6. The note read:

Police or anybody who cares:

If you receive this from Joey, it probably means I already killed her. I loved her. She didn't. She hurt me. I couldn't take. If she can't be mine she can't be anybody. I love God, but Satan has a hold of me. I love you mom. I love Joey and all my family. What I have done is wrong. Forgive me.

/s/ Josh Miller[1]

¶7. Investigator Fred Steele arrived at the jail some time later and read Miller his *Miranda* rights and questioned him. Steele stated Miller told him he had killed Aultman because she "hurt me real bad." Miller also asked Steele if he was going to hell for killing Aultman. Steele stopped questioning Miller when Miller's brother, an attorney, called the Sheriff's office to instruct Miller not to answer any more questions.

¶8. At trial Elliott Smith, with whom Miller had talked immediately prior to the murder, testified Miller told him he wanted to kill Aultman. Smith stated he did not believe Miller would kill her. Miller denied making the statement.

¶9. At the conclusion of the case, the jury was instructed on the requirements for murder and manslaughter. After deliberations, the jury returned a verdict of guilty on the charge of murder. Miller was sentenced to life in prison.

## DISCUSSION OF LAW

### I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE STATE OF MISSISSIPPI TO MAKE A SUBSTANTIVE AMENDMENT TO THE INDICTMENT HEREIN WITHOUT FURTHER ACTION OF THE GRAND JURY

¶10. The case against Miller was initiated with the following indictment:

Joshua Charles Miller did wilfully, unlawfully, feloniously without authority of law and of his malice aforethought, kill and murder one Kristen Aultman, a human being, contrary to and in violation of Section 97-3-19 of the Mississippi Code of 1972, as amended; against the peace and dignity of the State of Mississippi.

¶11. Upon motion by the State, the indictment was amended to read:

Joshua Charles Miller did wilfully, unlawfully, feloniously without authority of law and by his deliberate design to effect the death of the person killed, or of any human being, and the defendant did shoot, kill and murder one Kristin Aultman, a human being by shooting her with a shotgun, contrary to and in violation of Section 97-3-19 (1)(a) of the Mississippi Code of 1972, as amended; against the peace and dignity of the State of Mississippi.

¶12. The trial court granted the State's motion to amend, finding the change in the indictment was one of form and not substance. Miller argues the trial court erred in finding the change in the indictment was not a substantive change.

¶13. An indictment may not be amended to change the nature of the charge, except by action of the grand jury which returned the indictment. *Greenlee v. State*, 725 So. 2d 816, 819 (Miss. 1998) (citing *Akins v. State*, 493 So. 2d 1321, 1322 (Miss. 1986) (citing *Jones v. State*, 279 So. 2d 650, 651 (Miss.1973))). Amendment of the indictment is permissible if the change is to the form of the indictment and not to the substance. *Greenlee* at 821. (citing *Rhymes v. State*, 638 So. 2d 1270, 1275 (Miss. 1994)).

> It is well settled in this state . . . that a change in the indictment is permissible if it does not materially alter facts which are the essence of the offense on the face of the indictment as it originally stood or materially alter a defense to the indictment as it originally stood so as to prejudice the defendant's case.

*Greenlee* at 821 (quoting *Wilson v. State*, 574 So. 2d 1324, 1333 (Miss. 1990) (quoting *Ellis v. State*, 469 So. 2d 1256, 1258 (Miss. 1985) (quoting *Shelby v. State*, 246 So. 2d 543, 545 (Miss.1971)))). "The test for whether an amendment to the indictment will prejudice the defense is whether the defense as it originally stood would be equally available after the amendment is made." *Greenlee* at 822 (citing *Griffin v. State*, 584 So. 2d 1274, 1276 (Miss. 1991).

¶14. The changes to the indictment sought by the State in the case *sub judice* are the same changes sought by the State in *Greenlee*. In *Greenlee*, we held those changes were to the form and not to the substance of the indictment. *See Greenlee* at 822. Miller cannot credibly claim he did not know for what crime he was to be tried, nor can Miller claim the amendment did not afford him an opportunity to prepare and present a proper defense. This assignment has no merit.

## II. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO INSTRUCT THE JURY ON THE DEFINITION OF DELIBERATE DESIGN WHEN ASKED TO DO SO BY THE DEFENDANT

¶15. Deliberate design is an element the State is required to prove beyond a reasonable doubt before a defendant can be convicted of murder. *See* Miss. Code Ann. § 97-3-19 (1)(a) (1994).

¶16. Miller offered the following jury instruction, D-12, defining deliberate design.

> D-12: The Court instructs the Jury that Deliberate Design means intent to kill without authority of law, or killing without legal justification, legal excuse or under circumstances that reduce the act to a lesser crime. Deliberate design indicates full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences.

The trial court refused Miller's instruction. The State did not offer an instruction defining deliberate design. Miller now argues the trial court committed reversible error in refusing to grant the offered instruction because the jury was not adequately instructed on the meaning of deliberate design.

¶17. Miller relies on our decision in *Catchings v. State*, 684 So. 2d 591 (Miss. 1996), to support his argument that his conviction should be reversed because the jury was not adequately instructed on the elements of murder. In *Catchings*, the defendant requested a definitional instruction on deliberate design,

but the court refused to grant the instruction because the elements of murder were sufficiently defined by other accepted instruction. *Catchings*, 684 So. 2d at 599. Miller asserts that, although his case is similar to *Catchings*, the fundamental difference is that the *Catchings* jury was fully instructed on all the elements of murder, while Miller's jury was not.

¶18. In *Catchings* we refused to reverse the defendant's murder conviction because the manslaughter instruction given was not warranted under the facts of the case. *Id.* at 595. Catchings sought reversal because the trial court had refused an instruction defining deliberate design. *Id.* However, we reasoned that because there was so little evidence supporting manslaughter, the failure to grant the definitional instruction on deliberate design made no difference in the outcome of the case. *Id.* at 595.

¶19. Recently in *Williams v. State*, No. 95-CT-01199-SCT, 1998 WL 852598 (Miss. Dec. 10, 1998), we addressed a similar situation. Williams was convicted of murder and challenged his conviction based on improper instructions. The *Williams* jury was instructed on the elements of murder and manslaughter, but was not given an instruction which adequately described the required elements of deliberation or premeditation for murder. We described the evidence of deliberate design against Williams as "weak" and reversed and remanded for a new trial. *Williams*, at *1. We summed up the focus in *Williams* this way:

> What is under consideration in this case is whether, in a prosecution for deliberate design murder, where a manslaughter instruction is warranted and granted, the jury should be instructed as to how to determine the "aforethought" portion of "malice aforethought" or the "deliberation" portion of "deliberate design." We hold that such an instruction is proper in such a case as this, and error in this case to refuse a proper instruction. . . .

*Williams*, at *4.

¶20. The reversal of the murder conviction in *Williams* was distinguished from the affirmance of the murder conviction in *Catchings* because the manslaughter instruction in *Williams* "was clearly warranted as there is ample evidence from which the jury could infer that Williams acted on impulse or in the heat" of passion. No such evidence existed in *Catchings*. *Id.* at *4.

¶21. In the case *sub judice*, the evidence supporting the State's theory of murder is overwhelming. Miller told a friend he was going to kill Aultman because she rejected him. Miller called Aultman outside the church to his van. Miller pulled the shotgun out of his van and shot Aultman. Miller gave police a note he had written stating that he killed her because "she hurt me" and "If she can't be mine she can't be anybody." Miller confessed that he had killed Aultman during an interrogation by Investigator Steele. Miller agrees with this description of events, except that he says the gun went off when he was startled by kids playing in the churchyard. . The particular defense asserted by Miller, an accidental shooting occurring after a deliberate confrontation, was fully put by the particular manslaughter instruction he received. That manslaughter instruction did not require a jury to distinguish between a deliberate act done on sudden impulse in the heat of passion and one done according to some preformed intent. In these circumstances, the jury did not need the additional guidance of the deliberate design instruction proffered.

¶22. Based on our prior rulings in *Catchings* and *Williams*, this assignment has no merit.

### III. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE STATE OF MISSISSIPPI TO INTRODUCE A PICTURE OF THE

**VICTIM'S BODY AS IT LAY AT THE CRIME SCENE EVEN THOUGH THERE WAS NO DISPUTE AS TO THE CAUSE OF DEATH, THE PLACE AND TIME OF DEATH, THE NAME OF THE DECEDENT, AND AT WHOSE HANDS SHE DIED. FURTHERMORE, WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ALLOWING THE STATE OF MISSISSIPPI TO INTRODUCE INTO EVIDENCE A PRE-DEATH PHOTO OF THE THIRTEEN YEAR OLD VICTIM IN HER CHEERLEADER UNIFORM**

¶23. Miller argues the trial court committed reversible error when it admitted into evidence two photographs of the victim. Miller challenges the admission of a pre-death photograph of Aultman and a blow up of a photograph of Aultman's body as it was found at the crime scene. Miller asserts the admission of these photographs constituted reversible error because their admission was more prejudicial than probative.

¶24. We have held the trial judge has very broad discretion concerning the admission of photographs. *Gosset v. State*, 660 So. 2d 1285, 1292 (Miss. 1995). Even where the issue for which the photograph is introduced is ultimately stipulated to, "[a]s a general rule, the fact that a photograph of the deceased in a homicide case might arouse the emotions of jurors does not of itself render it incompetent in evidence so long as introduction of the photograph serves some legitimate, evidentiary purpose." *Walker v. State*, 671 So. 2d 581, 601 (Miss. 1995) (quoting *May v. State*, 199 So. 2d 635, 640 (Miss. 1967)).

¶25. The State argues the photographs were probative of the distance from which the victim was shot and how the shooting occurred. Considering Miller argued the shooting was accidental, the State's argument on this point is well taken. A pre-death photograph of the victim compared to a photograph of the victim at the crime scene could be said to be probative on the issue of how the shooting occurred. The trial judge did not abuse his discretion in admitting these photographs. This assignment has no merit.

**IV. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO REMAND THIS CASE TO YOUTH COURT, AND WHETHER OR NOT THE MISSISSIPPI YOUTH COURT ACT VIOLATES THE DUE PROCESS AND EQUAL PROTECTION CLAUSES OF THE MISSISSIPPI AND UNITED STATES CONSTITUTIONS**

¶26. In this assignment of error, Miller asserts that the jurisdictional provisions of the Youth Court Act in Miss. Code Ann. § 43-21-151 (Supp. 1998) are unconstitutional because they violate his due process and equal protection rights under the United States Constitution and the Mississippi Constitution.

¶27. Miller cites only *Mississippi Bd. of Nursing v. Belk*, 481 So. 2d 826 (Miss. 1985), for the proposition that the State cannot provide protection to one class of individuals while at the same time excluding from protection another class of individuals similarly situated. In *Belk*, we held the State denied experienced nurse anesthetists their full equal protection rights by requiring nurse anesthetists to follow a more rigorous certification procedure while requiring registered nurses to pay a fee for the same certification. The *Belk* Court found the State's separate classification of nurse anesthetists and registered nurses to be arbitrary under the circumstances and to violate the equal protection clause of the fourteenth amendment to the United States Constitution. *Belk*, 481 So. 2d at 830-31. Miller attempts to stretch the holding in *Belk* to support his proposition that the jurisdictional provisions of the Youth Court Act arbitrarily and unconstitutionally distinguish between juvenile offenders charged with crimes punishable by death or life imprisonment and juvenile offenders charged with lesser crimes.

¶28. The jurisdictional provisions of the Youth Court Act in § 43-21-151 state:

(1) The youth court shall have exclusive original jurisdiction in all proceedings concerning a delinquent child, a child in need of supervision, a neglected child, an abused child or a dependent child except in the following circumstances:

(a) Any act attempted or committed by a child, which if committed by an adult would be punishable under state or federal law by life imprisonment or death, will be in the original jurisdiction of the circuit court;

(b) Any act attempted or committed by a child with the use of a deadly weapon, the carrying of which concealed is prohibited by Section 97-37-1, or a shotgun or a rifle, which would be a felony if committed by an adult, will be in the original jurisdiction of the circuit court;

Miss. Code Ann. § 43-21-151(1) (a)&(b) (Supp. 1998).

¶29. We have previously addressed the constitutionality of these provisions in the death penalty context where a juvenile defendant challenged circuit court, as opposed to youth court, jurisdiction on cruel and unusual punishment grounds. See *Foster v. State*, 639 So. 2d 1263, 1295-96 (Miss. 1994) (per Smith, J., with three Justices concurring and two Justices concurring in result only) ("[w]hich court has jurisdiction over a capital death case dealing with a seventeen year old cannot constitute cruel and inhuman punishment as the issue of which court has jurisdiction fails to constitute any punishment whatsoever."). We have not yet addressed the constitutionality of the jurisdictional provisions based on the type of equal protection claim Miller raises on appeal.

¶30. The State directs us to ***Hoops v. State***, 681 So. 2d 521 (Miss. 1996), where we addressed the burden placed on a defendant who challenges the constitutionality of a statute:

With regard to the duties cast upon the assailant of a legislative enactment, the rule is fixed that a party who alleges the unconstitutionality of a statute has the burden of substantiating his claim and must overcome the strong presumption in favor of its validity. It has been said that the party who wishes to pronounce a law unconstitutional takes on himself the burden of proving this conclusion beyond all doubt, and that a party who asserts that the legislature has usurped its power or has violated the Constitution must affirmatively and clearly establish his position.

*Hoops*, 681 So. 2d at 536 (quoting *Touart v. Johnston*, 656 So. 2d 318, 321 (Miss. 1995)).

¶31. Miller has failed to make the required showing that his equal protection rights have been violated. Miller has failed to show the Legislature has usurped its power by requiring original circuit court jurisdiction for all cases where a juvenile has committed a crime punishable by death or life imprisonment. Other than the reasoning from *Belk*, Miller has offered no authority supporting his claim that the State has arbitrarily separated juveniles into two separate classes. This assignment has no merit.

### V. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO SUPPRESS STATEMENTS MADE BY THE DEFENDANT HEREIN

¶32. After his arrest, Miller was taken to the Lamar County Sheriff's office and placed in the booking room to await the arrival of Investigator Fred Steele. After being alone in the booking room for about ten to

fifteen minutes, Miller sent word to Officer Roseberry that he needed to see him. When Roseberry went to the booking room to speak with Miller, Miller handed Roseberry a note and said, "You need this." According to Roseberry, Miller must have written the note before he was arrested because Miller did not have the opportunity or the materials to write the note once he was taken into custody. Miller stated he wrote the note while he was in the booking room waiting to be interrogated. When Investigator Steele arrived, he Mirandized Miller and asked why he killed Aultman. Miller told Steele he killed Aultman because, "she hurt me real bad." Miller sought to have this statement and the note suppressed.

¶33. Miller first challenges the admission of the note by arguing he was not properly Mirandized before the note was turned over to police. Miller next challenges the admission of his statements to Steele and the note by arguing he cannot intelligently waive his rights as a juvenile.[(2)]

¶34. We have held when the trial court expressly or implicitly resolves the issue of admissibility of a confession against a defendant, the scope of review of that decision is limited.

> In *Stokes v. State*, 548 So. 2d 118, 122 (Miss. 1989), we held that when the circuit court expressly or implicitly resolves the issue of admissibility of a confession against a defendant, the scope of review is confined to the established limits. In *Alexander v. State*, 610 So. 2d 320 (Miss. 1992), we set out those limits:

> This is essentially a fact-finding function. So long as the court applies the correct legal standards, we will not overturn a finding of fact made by a trial judge unless it be clearly erroneous or contrary to the overwhelming weight of the evidence.

> Where, on conflicting evidence, the lower court admits a statement into evidence this Court generally must affirm.

*Dancer v. State*, 721 So. 2d 583, 587 (Miss. 1998) (internal citations & punctuation omitted).

¶35. In *Greenlee v. State*, a case involving a fifteen-year-old juvenile, we discussed *Miranda* requirements. The threshold question in a *Miranda* rights analysis is whether the defendant was in custody and being interrogated when the statement in question was made. *Greenlee*, 725 So. 2d at 825 (citing *Hunt v. State*, 687 So. 2d 1154, 1159 (Miss. 1996)). Neither general on the scene questioning, nor voluntary statements made by a defendant are enough to trigger the requirements of *Miranda*. *Greenlee*, 725 So. 2d at 825 (citing *Hunt*, 687 So. 2d at 1159 (citing *Miranda v. Arizona*, 384 U.S. 436, 477-78 (1966))).

¶36. The State has the burden of proving beyond a reasonable doubt that any confession given, was given voluntarily. *Haymer v. State*, 613 So. 2d 837, 839 (Miss. 1993). The State can make a prima facie case that it has met this burden through, "testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward." *Cox v. State*, 586 So. 2d 761, 763 (Miss. 1991). When the prima facie case is made, it is up to the defendant to present evidence to rebut the State's argument. *Cox*, 586 So. 2d at 763.

¶37. The State presented ample evidence to show that Miller was not interrogated until Investigator Fred Steele went to the booking room, read Miller his rights and questioned him. In fact, when Miller was arrested the officers cautioned Miller *not* to make any statements. Officer Roseberry testified that after Miller was arrested, Miller had neither the materials nor the opportunity to write the note Miller turned over

to police, so the note must have been written before Miller was arrested. Miller presented no evidence, other than his own statement, to show he wrote the note while in the booking room. Even assuming *arguendo* Miller did, as he claims, write the note in the booking room, the note was not the product of an interrogation and must be considered voluntary.

¶38. Miller also challenges the admission of the note and the admission of his statement to Officer Steele on the basis that a minor cannot intelligently waive his rights. This argument was rejected by this Court in *Morgan v. State*, 681 So. 2d 82 (Miss. 1996) and most recently in *Clemons v. State*, No. 97-KA-00373, 1999 WL 62782 (Miss. Feb. 11, 1999). We decline to adopt it today. This assignment is without merit.

## CONCLUSION

¶39. The conviction of Joshua Miller for the murder of Kristen Aultman is affirmed. The amendment to the indictment was to form and not to substance and did not affect Miller's ability to present a defense. The trial court's refusal to grant an instruction defining deliberate design was not error because the jury was properly instructed and there was little evidence supporting the manslaughter instruction. The trial court did not abuse its discretion in admitting the photographs of Kristen Aultman into evidence. Miller has failed to demonstrate that the jurisdictional provisions of the Mississippi Youth Court Act violate his rights to due process and equal protection under the United States and Mississippi Constitutions. Miller's statement and the note he gave police were properly admitted into evidence. The judgment of the Lamar County Circuit Court is affirmed.

¶40. **CONVICTION OF MURDER AND SENTENCE TO SERVE A TERM OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION. COBB, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶41. The defendant in this case was fourteen years old at the time of the crime. A fourteen year old cannot knowingly and intelligently waive his *Miranda* rights. Therefore, I dissent.

¶42. I find it anomalous that we continue to adhere to the fiction that a minor does not possess the sophistication to make informed decisions in civil matters but is intelligent enough to do so in all matters criminal, especially considering that in this country we profess to believe that a person's freedom should have greater protections than his pocketbook. Persons fourteen and under cannot consent to sexual intercourse [Miss. Code Ann. § 97-3-65(1)(b) (1998)][(3)]; if they are under eighteen, they cannot legally enter into contracts, buy or sell property, vote, maintain a residence or even choose the parent with whom they wish to live when their parents divorce. Under the age of twenty-one, a person cannot drink alcohol, purchase tobacco, or enter a casino.

¶43. Indeed, many jurisdictions consider anyone under the age of fourteen to be of "tender years"[(4)] and thus, deserving of special protection from the legal system. For instance, a child of tender years is entitled to invoke the attractive nuisance doctrine to recover from a landowner who permits the existence of a dangerous condition on his property of the sort likely to attract children. *Hughes v. Star Homes*, 379 So.2d 310, 304 (Miss. 1980). Because of their immaturity, children may not testify without the trial court having first satisfied itself that the child is capable of testifying. *Brent v. State*, 632 So.2d 936, 942 (Miss.1994) ("[b]efore allowing a child witness to testify, the trial judge should determine 'that the child has ability to perceive and remember events, to understand and answer questions intelligently and to comprehend and accept the importance of truthfulness"); M.R.E. 803(25).

¶44. The legislature has defined a "minor" as well as an "infant" as anyone under the age of twenty-one. Miss. Code Ann. § 1-3-27 (defining minor); § 1-3-21 (defining infant). A child or youth has been defined by the legislature as anyone under the age of eighteen. Miss. Code Ann. §43-16-3(a); § 43-17-3(c); §43-21-105(d); § 43-23-3(c).

¶45. Therefore, I maintain, as I did in my dissent in *Clemons v. State*, No. 97-KA-00373-SCT, 1999 WL 62782 (Miss. 1999), that this Court is in error when it fails to extend the special protections given minors to the criminal arena.

¶46. Accordingly, for the same reasons I expressed in *Clemons,* I dissent.

1. Joey apparently refers to Joey Robertson, described by Miller as his best friend.

2. Miller does not argue his statements to Officer Roseberry and Officer Warden at the time he was arrested are inadmissible.

3. Indeed, mistake as to the victim's age is no defense to statutory rape. *Collins v. State*, 691 So.2d 918 (Miss. 1997). "The age of the victim makes or breaks the conviction." *Washington v. State*, 645 So.2d 915, 919 (Miss. 1994).

4. See Comment to Miss.R.Evid. 803(25). The Comment advises that children over fourteen may be considered to be of tender years where they have a mental age of less than fourteen. See, e.g., *Hashtani v. Duke Power Co.,* 578 F.2d 542 (4th Cir. 1978) (14 year old who had flunked first grade was of tender years and entitled to invoke attractive nuisance doctrine).