# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KA-00585-SCT

*JUSTIN DALE HAMMONS*

**v.**

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/05/2004 |
| TRIAL JUDGE: | HON. ROBERT H. WALKER |
| COURT FROM WHICH APPEALED | HARRISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JIM DAVIS |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 08/18/2005 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., DICKINSON AND RANDOLPH, JJ.**

**RANDOLPH, JUSTICE, FOR THE COURT:**

¶1. A two-count indictment was returned against Justin Dale Hammons in the Circuit Court of Harrison County, Mississippi, First Judicial District, charging him with capital murder and the unlawful possession of a firearm or weapon after having a prior felony conviction. After a trial, the jury found Hammons guilty of capital murder.[1] Hammons was sentenced to life

---

[1]Count II of the indictment concerning unlawful possession of a weapon was severed by the trial court.

imprisonment without the possibility of parole, and the trial court denied his Motion for JNOV or in the alternative, a New Trial.

¶2.     Hammons appeals and raises three issues on appeal:

I.     That the trial court erred when it granted the State's motion in limine to prohibit Hammons from impeaching a State's witness with a prior conviction;

II.     That the trial court erred when it denied Hammons's motion to suppress his statement made at booking; and

III.     That cumulative error by the trial court mandates the reversal of Hammon's conviction.

## FACTS

¶3.     On the night of July 7, 2002, Danielle Richardson and her friend Michelle Gonzalez were at Bill Funderburk's house watching television. Danielle had recently broken up with her boyfriend, Hammons. Hammons arrived at Bill's house later that night, and an argument ensued wherein Hammons began to beat up Danielle. Bill then threw Hammons out the back door and shut and locked the door. Hammons ran back to his truck and returned to the door with a shotgun. Hammons told Bill to open the door, and when he refused, Hammons smashed the glass of the sliding glass door with the butt of the shotgun and came through the door. Hammons told Bill to get out of the way or he would kill him.

¶4.     Hammons then ran upstairs, where Danielle and Michelle had locked themselves in a bedroom. Michelle was on the phone with 911 at this time. Hammons began punching a hole through the bedroom door and was able to unlock the door. Michelle then fled to the bathroom where she hid in the shower. Hammons then shot Danielle twice with the shotgun and ran back

down the stairs and out of the house. Danielle was fatally shot in the neck and the chest and died shortly thereafter.

## ANALYSIS

### I. Impeachment of a State's witness with a prior conviction.

¶5. One of the witnesses for the prosecution was a man named Walter Necaise, a friend of both Hammons and Danielle. Before trial, the State sought through a motion in limine to prevent the defense from using the prior convictions of the witness for impeachment purposes. Hammons claims it was error for the trial court to prevent the defense from using a recent grand larceny conviction to impeach Necaise.

¶6. Mississippi Rule of Evidence 609 governs the impeachment of witnesses by evidence of conviction of a crime. Rule 609 reads in pertinent part as follows:

> (a) General Rule. For the Purposes of attacking the credibility of a witness,
> (1) evidence that (A) a nonparty witness has been convicted of a crime shall be admitted subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and (B) a party has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the party; and
>
> (2) evidence that any witness has been convicted of a crime shall be admitted if it involved dishonesty or false statement, regardless of punishment.

M.R.E. 609.

¶7. M.R.E. 609(a)(1) was amended in 2002. Therefore, this Court must analyze impeachment by a prior conviction under the new rule. This Court finds that the requirements of M.R.E. 609(a)(1)(A) were met and that the trial court erred in excluding evidence of Necaise's prior conviction. Necaise was a nonparty witness and was previously convicted of

3

grand larceny, which is punishable by imprisonment in excess of one year. Miss. Code Ann. § 97-17-41. Under M.R.E. 609(a)(1)(A), this evidence must satisfy the guidelines of M.R.E. 403, which states, in pertinent part: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice...." Therefore, Necaise's prior felony conviction "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." This Court finds that the trial court erred in excluding evidence of Necaise's prior felony conviction, because the probative value of this evidence was not substantially outweighed by the danger of unfair prejudice.

¶8. The first court to deal with Rule 609 as amended in 2002 was the Court of Appeals in *Al-Fatah v. State*, 856 So. 2d 494, 501 (Miss. Ct. App. 2003), which affirmed the impeachment of a nonparty witness by evidence of a prior burglary conviction. Prior to the rule change, cases were consistent with this conclusion. *See White v. State*, 785 So. 2d 1059, 1063 (Miss. 2001) (error for trial court to exclude evidence that state's primary witness had a prior felony drug conviction); *Baldwin v. State*, 784 So. 2d 148, 162-63 (Miss. 2001) (evidence that defense witness had a prior drug conviction was admissible).

¶9. The trial judge did not allow evidence of Necaise's grand larceny conviction to be used for impeachment purposes because he found it was not a "crimen falsi crime." However, because this Court finds that the conviction could be used to impeach Necaise under Rule 609(a)(1), we do not analyze it under Rule 609(a)(2). The trial judged failed to recognize that the conviction could be used to impeach Necaise if the requirements of M.R.E. 609(a)(1)(A) were met. It was error for the trial court to exclude evidence of Necaise's prior grand larceny conviction.

4

¶10. While the trial court did err in excluding Necaise's prior grand larceny conviction from evidence, this error was harmless. "[F]or a case to be reversed on the admission or exclusion of evidence, it must result in prejudice and harm or adversely affect a substantial right of a party. Error is reversible only where it is of such magnitude as to leave no doubt that the appellant was unduly prejudiced." *Holladay v. Holladay,* 776 So. 2d 662, 672 (Miss. 2000). The Constitution does not guarantee a perfect trial, but it does entitle a defendant in a criminal case to a fair trial. *Clark v. State*, 891 So. 2d 136, 141 (Miss. 2004), citing *Delaware v. Van Arsdall*, 475 U.S. 673, 681, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986).

¶11. In light of the overwhelming evidence against Hammons, the trial court's error was harmless. *See Clark*, 891 So. 2d at 142; *Riddley v. State*, 777 So. 2d 31, 35 (Miss. 2000); *Kircher v. State*, 753 So. 2d 1017, 1027 (Miss. 1999). The Supreme Court has held that where there has been an improper restriction on a defendants' ability to impeach a witness, certain factors must be looked at to determine whether or not the error was harmless. *Delaware v. Van Arsdall*, 475 U.S. at 681, 106 S.Ct. at 1436. "These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case." *Van Arsdall*, 475 U.S. at 684, 106 S.Ct. at 1438.

¶12. There was overwhelming evidence against Hammons to support the jury's finding. Walter testified to events prior and subsequent to Danielle's murder, however, there were two paramount witnesses for the State who observed the events which occurred at Bill's house the

5

night of July 7, 2002. Both Michelle and Bill testified that Hammons came in the house and started to push and beat up Danielle. Michelle was hiding in the room with Danielle when Hammons barged in, and she saw Hammons cock the gun before she ran to the bathroom to hide. She further testified that she heard two gunshots while she was hiding in the bathroom. Bill testified that Hammons smashed the glass out of the door with a shotgun and ran upstairs. Bill further testified that he heard a bang come from upstairs, after which Hammons ran downstairs and out of the house. Both Michelle and Bill testified that they found Danielle wounded and lying on the floor in the bedroom, and they attempted to perform CPR on her.

¶13. Necaise's testimony primarily consisted of events which happened the morning following Danielle's murder. He testified that Hammons showed up at the home of Necaise's girlfriend, Kim Hair, around 8:30 in the morning. He further testified that Hammons told him what had happened the night before and told him that he had shot Danielle. Necaise also testified that he found a shotgun in the truck that Hammons had been driving, which he later learned to be the murder weapon. Kim Hair corroborated Necaise's testimony. She testified that Hammons showed up around 8:00 a.m. saying that he had shot "her" and that he was in trouble. Kim further testified that Hammons told her all about what happened the night before and about shooting Danielle. Kim testified that Hammons said, "he loved her to death, but that he felt better," and that he shot Danielle at very close range. Kim also testified that she saw the shotgun that Hammons had used to shoot Danielle, and recognized it because it was a gun that they normally used to go hunting.

¶14. Because of the overwhelming evidence against Hammons, the trial court's error in excluding evidence of Necaise's grand larceny conviction was indeed harmless. Necaise's

6

testimony was largely corroborated by Kim Hair who was with Necaise when Hammons arrived at her house the morning after the shooting. Furthermore, two witnesses testified who were at the scene of the murder, and witnessed the events which led up to the shooting of Danielle. A 911 call confirms the events as were testified to by Michelle and Bill. Hammons even admitted to the police that he shot one person. Therefore, while the trial court did err, this Court finds this error to be harmless.

## II.     Hammons's statement at booking.

¶15.    Prior to trial, Hammons moved to suppress his statement during the booking process at the Harrison County Detention Center. He argues that the statement was made without *Miranda* warnings and should have been inadmissible. The trial court held a hearing on this motion, wherein Officers Glenn Courier, Ken VanAlstyne, and Mike Neill testified to the incriminating statement made by Hammons. Officers Courier and VanAlstyne testified that they presented the appropriate paperwork to the booking officer, Neill. Hammons was with them at the time they presented the paperwork to the booking officer so that he could be booked into the jail facility. While Officer Neill was reviewing the documents, he noticed that there was a number 2 listed next to the homicide charge. Neill then asked Officer VanAlstyne if Hammons was being charged with two homicide counts. At this point, Hammons then said he had only shot one person. Hammons argues that the trial court erred in admitting this statement into evidence.

¶16.    When the trial court resolves the issue of admissibility of a confession against a defendant, the scope of review of that decision is limited. *Miller v. State*, 740 So. 2d 858, 866 (Miss. 1999). "So long as the court applies the correct legal standards, we will not

overturn a finding of fact made by a trial judge unless it be clearly erroneous or contrary to the overwhelming weight of the evidence. Where, on conflicting evidence, the lower court admits a statement into evidence this Court generally must affirm." *Id.* at 867.

¶17. Whether Hammons's *Miranda* rights were violated depends on whether he was in custody and being interrogated. *Rhode Island v. Innis,* 446 U.S. 291, 300-01, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980); *Greenlee v. State*, 725 So. 2d 816, 825 (Miss. 1998). "A person's Miranda rights are not triggered by general on-the-scene questioning and/or any voluntary statement." *Greenlee,* 725 So. 2d at 825. This Court has stated the following with respects to the burden of proof the State has in proving that a confession was given voluntarily:

> The State has the burden of proving beyond a reasonable doubt that any confession given, was given voluntarily. *Haymer v. State*, 613 So. 2d 837, 839 (Miss. 1993). The State can make a prima facie case that it has met this burden through, "testimony of an officer, or other persons having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward." *Cox v. State*, 586 So. 2d 761, 763 (Miss. 1991). When the prima facie case is made, it is up to the defendant to present evidence to rebut the State's argument. *Cox*, 586 So. 2d at 763.

*Miller*, 740 So. 2d at 867.

¶18. Here, the State presented ample evidence that the statement made by Hammons was voluntary and was not in response to express questioning or its functional equivalent. Hammons was not being asked any questions. He was simply present in the booking room when Neill and VanAlstyne were having a discussion about paperwork in order to book him. Hammons voluntarily responded to a question that was posed to VanAlstyne by Neill, of how many charges of homicide were being filed against Hammons. Hammons independently volunteered the information that he had only shot one person, without compulsion or coercion.

8

Finding that the judge did not err in denying Hammons's motion to suppress this statement, this issue is without merit.

### III. Cumulative Error.

¶19. Individual errors which may not be reversible in and of themselves, may become reversible error when combined with other errors. *Caston v. State*, 823 So. 2d 473, 509 (Miss. 2002). Hammons argues that the totality of the errors committed in this case requires this Court to reverse. This Court finds this argument to be without merit. The trial court did err by failing to allow Necaise's grand larceny conviction to be used for impeachment purposes; however, this error was harmless as discussed supra. Finding no cumulative error, this issue is without merit.

### CONCLUSION

¶20. The trial court erred in failing to allow a prior conviction of a non-party witness to be used for impeachment purposes. However, given the overwhelming evidence supporting the jury's verdict, this error was harmless. The trial court did not err in denying Hammons's motion to suppress his statement that he had shot one person. We find no merit to Hammons's argument that cumulative error requires reversal in this case. Therefore, this Court affirms the judgment of the circuit court.

¶21. **CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT HOPE OF PAROLE OR PROBATION, AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, CARLSON AND DICKINSON, JJ., CONCUR. GRAVES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. DIAZ, J., NOT PARTICIPATING.**