586 So.2d 761 (1991)
Randy Edward COX a/k/a Randy Edward White,
v.
STATE of Mississippi.
No. 07-KA-59331.
Supreme Court of Mississippi.
August 28, 1991.
*762 Paul R. Scott, Wilroy Scott & Rutherford, Hernando, for appellant.
Mike C. Moore, Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and PRATHER and BANKS, JJ.
PRATHER, Justice, for the Court:
Involved in this appeal is the question of the sufficiency of authentication of records used in a habitual offender hearing under Miss. Code Ann. § 99-19-83 (Supp. 1990). Randy Edward Cox, a/k/a Randy Edward White (Cox) was convicted in the Circuit Court of DeSoto County of arson. After a separate sentencing hearing, Cox was sentenced as an habitual offender under Miss. Code Ann. § 99-19-83 (Supp. 1990), to life, without the reduction or suspension of sentence, or eligibility for parole or probation, in the Mississippi Department of Corrections. This Court affirms the conviction, but reverses and renders the sentence as an habitual offender.

I. FACTS
A fire originated in the home of Eddie and Marjorie Sullivan in Southaven, DeSoto County, Mississippi, during the early morning hours of April 14, 1985. The Sullivans were out of town, but they left the house under the supervision of their son, Danny Sullivan.
William Marion Sullivan, of the Southaven Fire Department, responded to the fire and stated that upon entering the house he saw one fire and heard at least one more. Ronald L. White, Fire Marshall of the Southaven Fire Department, trained in arson and fire investigation, also responded to the Sullivan fire and began to investigate to determine the fire's origin and its cause. Fire Marshall White determined that there were at least three fires in the house and that they were all deliberately set.
On May 27, 1985, in connection with his investigation of the Sullivan fire, Fire Marshall White made a trip to the Criminal Justice Complex of Memphis, Tennessee, to interview Randy Edward Cox, who was being held there. Fire Marshall White advised Cox of his constitutional rights and informed him that he was the subject of an arson investigation. Cox waived his rights and signed a waiver of rights form. The form was also signed by Fire Marshall White and Lt. D.E. Strauser of the Metro Arson Division of Memphis, who was also present during the interview. Cox then made a handwritten statement describing the events surrounding the fire and admitting to setting one of the three fires, after Danny Sullivan started the first one. Cox responded negatively to a question as to whether he was "threatened, abused, kicked, beaten, or promised anything in order to obtain the statement."
During the trial, the State questioned Fire Marshall White about his interview with Cox and the written statement.[1] Cox *763 objected to this testimony citing the State's failure to show that the confession was freely and voluntarily given. This was Cox' first challenge to the voluntariness of the confession. Outside the jury's presence, the trial court heard the suppression motion and found that the State had laid the necessary predicate of voluntariness to admit the evidence.
Fire Marshall White then testified before the jury that Cox had admitted in his interview to setting one of the fires by throwing a burning rag into a closet. Further testimony about the interview was elicited from Lt. Strauser. Lt. Strauser testified that Cox was advised of his constitutional rights and that he agreed to waive them. Lt. Strauser responded negatively when asked if Cox was in any way coerced, threatened, promised anything, or abused into making the statement. He responded affirmatively when asked if Cox knowingly, voluntarily and intelligently gave the statement. Lt. Strauser also testified that Cox admitted to setting one of the fires by picking up a burning rag and throwing it in a closet.
The State rested. Cox did not testify in his own behalf and did not call any witnesses. The jury returned a verdict of guilty. A separate hearing was held on the habitual offender portion of the indictment. The trial court found Cox to be an habitual offender and sentenced him to life without the possibility of reduction or suspension of sentence, or eligibility for parole or probation under § 99-19-83.
Cox appeals his conviction and sentence, and asserts as error: (1) that the trial court erred in allowing Fire Marshall White and Lt. Strauser to testify as to the contents of his written statement; (2) that the verdict was not supported by evidence; (3) and that the trial court erred in allowing documents and letters into evidence during the sentencing phase of his trial.

II. VOLUNTARINESS OF COX' CONFESSION
Cox' first assignment of error is that the trial court erred in admitting the testimony of Fire Marshall White and Lt. Strauser about his confession for failure to prove its voluntariness, and for the State's failure to present all witnesses to the confession.
The United States Supreme Court has pronounced the law regarding the admissibility of a defendant's waiver of his privilege against self-incrimination under the Fifth Amendment. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Miranda requires proof that the waiver was voluntarily, knowingly, and intelligently made. The trial judge makes that determination. Findings by a trial court that a confession was voluntary and that the confession is admissible will not be reversed by this Court as long as the trial court applies the correct principles of law and the finding is factually supported by the evidence. Davis v. State, 551 So.2d 165, 169 (Miss. 1989); Dedeaux v. State, 519 So.2d 886 (Miss. 1988).
When the voluntariness of a confession is put into question, the defendant has a due process right to a reliable determination that the confession was in fact voluntarily given. Stokes v. State, 548 So.2d 118, 121 (Miss. 1989). The State bears the burden of proving all facts prerequisite to admissibility beyond a reasonable doubt. Davis, 551 So.2d at 169; Jones v. State, 461 So.2d 686, 697 (Miss. 1984); Neal v. State, 451 So.2d 743, 753 (Miss. 1984). This burden is met and a prima facie case made out by the testimony of an officer, or other person having knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward. The defendant must offer testimony that violence, threats of violence, or offers of reward induced the confession to rebut the State's prima facie case. If the defendant does this, then the State must offer all the officers who were present when the defendant was questioned and when the confession was signed, or show why they are not present. Tolbert v. State, 511 So.2d 1368, 1376 (Miss. 1987), *764 quoting Agee v. State, 185 So.2d 671, 673 (Miss. 1966).
This procedure properly occurs before trial in a suppression hearing conducted out of the presence of the jury. M.R.E. 104. In the case sub judice no pre-trial motion to suppress was filed. The trial court conducted a hearing in chambers during the trial, after Cox' in-court objection to the voluntariness of the confession. The trial court found that the State had established a "proper predicate" on the testimony of Fire Marshall White. The onus was then on Cox to provide other evidence or testimony on the voluntariness issue as rebuttal to the State's predicate. Cox did not rebut the State's predicate during argument on the motion. Without rebuttal from the defendant, the State does not need to produce all of the witnesses to the confession to establish voluntariness, the prima facie case is sufficient. See Hemingway v. State, 483 So.2d 1335, 1337 (Miss. 1986). Nevertheless, both officers who were present at the interview testified at trial after the court ruled their testimony regarding the confession admissible.
This Court holds that the trial court did follow the correct legal standards to determine the admissibility of the contents of Cox' confession to the officers and that there was substantial evidence to support his finding of voluntariness. Having met this test this Court may not disturb the trial court's finding. Jones, 461 So.2d at 697. This assignment is without merit.

III. SUFFICIENCY OF THE EVIDENCE
Cox asserts that the evidence offered by the State was not sufficient to support the verdict of guilty. The standard of review for challenges to the legal sufficiency of the evidence is provided in Benson v. State, 551 So.2d 188 (Miss. 1989). The Court stated:
Recently in McFee v. State, 511 So.2d 130 (Miss. 1987), this Court repeated its standard of review for challenges to the legal sufficiency of the evidence.
When on appeal one convicted of a criminal offense challenges the legal sufficiency of the evidence, our authority to interfere with the jury's verdict is quite limited. We proceed by considering all of the evidence  not just that supporting the case for the prosecution  in the light most consistent with the verdict. We give the prosecution the benefit of all favorable inferences that may reasonably be drawn from the evidence. If the facts and inferences so considered point in favor of the accused with sufficient force that reasonable men could not have found beyond a reasonable doubt that he was guilty and weight that, having in mind the beyond the reasonable doubt standard, reasonable and fairminded jurors in the exercise of impartial judgment might have reached different conclusions, the verdict of guilty is thus placed beyond our authority to disturb. See e.g., Gavin v. State, 473 So.2d 952, 956 (Miss. 1985); May v. State, 460 So.2d 778, 781 (Miss. 1984).

McFee at 133-134. See also Winters v. State, 449 So.2d 766 (Miss. 1984).
Benson, 551 So.2d at 193.
Cox' challenge to the legal sufficiency of the evidence of his arson conviction rests on the argument that Danny Sullivan set the initial fire in the Sullivan home. The testimony of Fire Marshall White and Lt. Strauser shows that Danny Sullivan may have originally started the first fire. However, the two also testified that Cox stated to them that he started one of the fires by taking a burning rag from another fire and throwing it into a closet. Miss. Code Ann. § 97-17-1 (1972) states:
Any person who wilfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house ...
It is clear from the evidence that Cox participated as a principal with Danny Sullivan in burning the Sullivan home. The evidence in the record does not support Cox' argument that reasonable persons could find him not guilty of arson beyond a reasonable doubt. Disturbance of this verdict is beyond the authority of this Court.

*765 IV. ADMISSION OF DOCUMENTS AS COMPETENT EVIDENCE OF PRIOR CONVICTIONS
Finally, Cox asserts that documents used as exhibits to sentence him as a habitual offender under § 99-19-83[2] were not admissible evidence of a prior conviction. The State produced a Mississippi conviction of robbery with a deadly weapon as evidence of a prior conviction and sought to prove a second prior conviction, as required by the statute. Cox does not challenge the Mississippi conviction, but challenges only the out-of-state exhibits presented to prove the second prior conviction.
The State offered as evidence of a second conviction an exhibit prepared by the Bureau of Identification of the Memphis Police Department, which detailed his prior arrest and conviction record from the Federal Bureau of Investigation. Cox objected to this exhibit and questioned the authenticity of the document, due to the fact that it was attested to by a notary public and not by a clerk of court or official custodian of records. The State then offered a letter from J.W. Crawford, Correctional Records Supervisor III of the Reception and Medical Center of the Department of Corrections for the State of Florida that was also sworn before a notary public. The letter stated that Cox was sentenced for the crime of burglary and that he was detained by the Department of Corrections from November 3, 1980, until he escaped on September 4, 1981. Cox objected to the admission of the letter as an exhibit on the ground that the letter was hearsay.
The State additionally offered as an exhibit a group of documents with a cover letter from James T. Wainwright, Superintendent of the Florida Department of Corrections. The documents were uncertified copies of commitment papers, judgment of conviction, fingerprints and photographs from the official file copies. Some of the copied documents had the seal of the clerk of the convicting court; none were certified under 28 U.S.C.A. § 1739, which provides the method of certifying documents for transmittal between states. Cox again objected to the documents on the ground that the documents were not properly authenticated and only notarized by a notary public. The trial court overruled the objection at that point and received the documents into evidence; the trial court then found that Cox was a habitual offender.
Cox argues that if the actual judgment of conviction is not introduced, conviction may only be proved by documents accorded equivalent evidentiary weight by statute. DeBussi v. State, 453 So.2d 1030 (Miss. 1984). However, DeBussi was decided before the adoption of the Mississippi Rules of Evidence, effective January 1, 1986. This trial was held in February of 1986. The issue of whether a document is legally authentic as to be admissible evidence of prior convictions is now governed by Rules 901 and 902 of the Mississippi Rules of Evidence. Compare King v. State, 527 So.2d 641, 646 (Miss. 1988). Rule 901 states:
Rule 901. REQUIREMENT OF AUTHENTICATION OR IDENTIFICATION
(a) General Provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

*766 (b) Illustrations. By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirement of this rule:
... .
(7) Public Records or Reports. Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or data compilation, in any form, is from the public office where items of this nature are kept.
M.R.E. 901(a), (b)(7), (1990). Rule 902 provides:
RULE 902. SELF-AUTHENTICATION
Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
(1) Domestic Public Documents Under Seal. A document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory, or insular possession thereof, or of the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.
(2) Domestic Public Documents Not Under Seal. A document purporting to bear the signature in his official capacity of an officer or employee of any entity included in paragraph (1) hereof, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.
.....
(4) Certified Copies of Public Records. A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2), or (3) of this rule or complying with any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority.
... .
M.R.E. 902(1), (2) and (4), (1990).
This Court, in the pre-rule case of Monroe v. State, 515 So.2d 860 (Miss. 1987), anticipated the issue raised in this case. In Monroe, this Court stated:
At the outset we must make clear that this issue is not governed by the Mississippi Rules of Evidence, effective January 1, 1986. Monroe was tried in early October 1985, so we must rely on our statutory and common law rule of evidence.
Similar future questions must be governed by M.R.E. 901(7), 902(1) and (4). See 5 D. Louisell & C. Mueller, Federal Evidence, § 532 (1981) for a helpful analysis of a similar problem under the Federal Rules of Evidence.
Since certified copies are admissible, certification becomes the authenticating mechanism for admitting copies as originals. The certification provides self authenticity by which a copy might be admitted without further assurances of its genuineness. This statute is no more than a reflection of this country's common law.
As a substitute for an original public record, which ought not to be constantly removed, our courts have long recognized the original should be permitted to be evidenced by "a copy given by a public officer whose duty it is to keep the original."
5 J. Weinstein & M. Berger, Weinstein's Evidence, § 902(4)[01], at 902-25 (1983).
Theoretically, however, this certification contains two components. Even if the custodian has made his attestation, the court must know that the custodian's attestation is genuine. McCormick states the issue thusly:
[H]ow is the court to know without proof that the signature or seal appearing *767 on the writing is actually that of the official whose name and title are recited?

McCormick on Evidence, § 228 at 700 (E. Cleary ed. 1984). The authors note that many states have eliminated this hurdle by statute. We think this was the purpose of Miss. Code Ann. § 13-1-77 (1972). Our statute provides that a certified copy from the custodial state officer "shall be received in evidence in all cases." We think the intent of the statute was to allow domestic judicial records to be received without the need of authenticating the certification. We pause to note that this seems to be the position of our new Mississippi Rules of Evidence. See M.R.E. 902(4) and (1). While the rules are not controlling, they provide additional support for our proposition.
The only question left is whether the sentencing order was properly certified.
Monroe, 515 So.2d at 868.
This Court has held that in habitual offender sentencing trials where the actual judgment of conviction is not introduced, the issue may only be proven by documents accorded the equivalent evidentiary weight by statute. DeBussi v. State, 453 So.2d 1030 (Miss. 1984); Pace v. State, 407 So.2d 530 (Miss. 1981).
With the adoption of the Mississippi Rules of Evidence on January 1, 1986, the issue of what documents are afforded such evidentiary weight are no longer controlled by statute but rather by Article IX, Authentication and Identification, of the rules. M.R.E. 901(a) states the general rule that the requirement of authentication as a prerequisite to admissibility may be established by evidence sufficient to support a finding that the matter in question is what the proponent claims it is. In this case, the State offered no proof whatsoever which would support such a finding. Rather the State sought to introduce the exhibits as self-authenticating documents under M.R.E. 902, which provides that certain documents may be admitted without extrinsic evidence of authenticity. However, the exhibits in question fail to meet the requirements of any of the provisions of M.R.E. 902.
Paragraph (1) of M.R.E. 902 makes domestic public documents under seal self-authenticating. Paragraph (2) of M.R.E. 902 makes domestic public documents not under seal self-authenticating if another public officer certifies under seal that the signer has the official capacity claimed and that the signature is genuine. Paragraph (4) of M.R.E. 902 makes certified copies of public record self-authenticating if the certification complies with Paragraphs (1), (2) or (3), any Act of Congress or rule prescribed by the Supreme Court pursuant to statutory authority.
The certification must not only certify as to the authenticity of the signature but also as to the official capacity of the signor. Exhibits that are not properly authenticated cannot be accepted as evidence. In the case sub judice the State failed to produce evidence of a second felony conviction. Exhibit S-4, documents from the Shelby County, Tennessee Bureau of Investigation, were not properly certified, as the copies were only notarized. Exhibit S-5, the Crawford letter was not a public document. Exhibit S-6, the file copies from the Reception and Medical Center of the Florida Department of Corrections, were copies of copies; they were not certified copies of a public record. Therefore, the trial court improperly sentenced Cox as an habitual offender; this Court reverses the sentencing as an habitual offender.
In reversing the trial court's sentence, this Court is keenly aware of the burden placed on the State to obtain proof of prior convictions from sources that insure authenticity under the rules. This burden is not unreasonable, considering that the State seeks to enhance the sentence of a defendant; authentic documentation provides reliable proof that the defendant merits an enhanced sentence.
The question now becomes "whether the State has the right to a second chance at proving the [habitual offender] status of [Cox] as opposed to [Cox's] right not to be twice placed in jeopardy." DeBussi, 453 So.2d at 1032. Miss.Const. art. 3 § 22 *768 (1890). Dycus v. State, 440 So.2d 246, 258 (Miss. 1983) (applying double jeopardy to capital sentencing proceeding).
In DeBussi, this Court held that re-prosecution of an habitual offender was barred where there was not sufficient evidence to support a conviction apart from the evidence erroneously admitted by the trial judge. Although the State "could possibly cure" this error "if it were given a second opportunity," "the essence of the double jeopardy prohibition is to limit the State to one fair opportunity to offer what proof it could assemble." DeBussi, 453 So.2d at 1034.
The habitual offender portion of this sentence must be vacated for reason of the insufficiency of the evidence to support the finding apart from the evidence erroneously admitted by the trial court. Only one valid conviction was admitted. The statute, Miss. Code Ann. § 99-19-83 (Supp. 1990), requires sufficiently authenticated proof of two convictions. Failing in its attempt on the first trial, Miss.Const. art. 3, § 22 bars the State from perfecting its evidence through successive attempts. Tibbs v. Florida, 457 U.S. 31, 41, 102 S.Ct. 2211, 2217, 72 L.Ed.2d 652 (1982).
Resentencing for the affirmed conviction of arson of a dwelling house must be upheld. Miss. Code Ann. § 97-17-1 provides for a sentence of not less than two (2), nor more than twenty (20) years in the Department of Corrections. This case is remanded for re-sentencing under this statute.
AFFIRMED AS TO THE CONVICTION FOR ARSON; REVERSED AND RENDERED AS TO THE FINDING THAT APPELLANT WAS AN HABITUAL OFFENDER AND REMANDED FOR PROPER RE-SENTENCING UNDER MISS. CODE ANN. § 97-17-1 (1972).
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and ROBERTSON, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] A written confession was signed by Cox relating to charges of armed robbery of Danny Joe Sullivan and the grand larceny of an automobile belonging to Ed Sullivan's corporate business, as well as to the charge of arson of the Sullivan home. Because of the inability to refer to the other crimes, the State did not introduce the written statement, but brought the witnesses to the confession to testify to the arson charge alone.
[2] § 99-19-83. Sentencing of habitual criminals to life imprisonment.

Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to and served separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, and where any one (1) of such felonies shall have been a crime of violence shall be sentenced to life imprisonment, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation. Miss. Code Ann. § 99-19-83 (Supp. 1990).
This statute places upon the State the burden of proving:
(1) that the defendant was convicted of two prior felonies, (2) one of which was a violent crime, and (3) that the defendant had been sentenced to and served at least one year on each of the prior felonies. McLamb v. State, 456 So.2d 743, 746 (Miss. 1984).