LEE, P.J.,
for the Court.
PROCEDURAL HISTORY AND FACTS
¶ 1. On the morning of April 6, 2003, Ronnie Powell entered a BP Service Station in Vicksburg. Linda Redditt, an employee at the BP, testified that Powell approached her, brandishing a gun. Powell demanded money, which Redditt gave to Powell. Although Powell was wearing a gray cap with a black fishnet stocking over his face, Redditt was able to give a de *976 scription of Powell. Shortly after being apprehended, Powell confessed to committing the crime.
¶2. On March 12, 2004, a jury in the Warren County Circuit Court found Powell guilty of armed robbery. Powell was sentenced to twenty years, with fifteen to serve in the custody of the Mississippi Department of Corrections, the remainder suspended and five years’ post-release supervision. Powell now appeals to this Court asserting the following: (1) the trial court erred in denying Powell’s motion for mistrial and/or motion to set aside the verdict as a result of jury misconduct; (2) the trial court erred in failing to suppress both the out-of-court and in-court identification of Powell by Redditt; (3) the trial court erred in denying Powell’s motion to suppress his confession; and (4) the trial court erred in denying his peremptory instruction and subsequent motion for a judgment notwithstanding the verdict because the verdict was against the overwhelming weight of the evidence. Finding no error, we affirm.
DISCUSSION
I. DID THE TRIAL COURT ERR IN DENYING POWELL’S MOTION FOR A MISTRIAL AND/OR MOTION TO SET ASIDE THE VERDICT DUE TO JURY MISCONDUCT?
¶ 3. In his first issue on appeal, Powell argues that the trial court erred in denying his motion for a mistrial due to jury misconduct. Powell contends that a mistrial should have been granted because a juror was talking on a cell phone during deliberations and a juror had a discussion with a third party, Senator Mike Chaney, about deliberations. It is well-settled that the grant or denial of a motion for mistrial is within the discretion of the trial court and, upon review, we must determine whether the trial court abused its discretion in its ruling. Pulphus v. State, 782 So.2d 1220, 1222 (¶ 10) (Miss.2001).
¶ 4. During deliberations, the trial judge received a phone call from Senator Chaney who had spoken with one of the jurors. Senator Chaney stated that this juror was angry because another juror was talking on her cell phone during deliberations. After much discussion, the trial judge allowed the jury to reach a verdict. Once the jury was dismissed, the trial judge conducted an examination of the juror who had spoken with Senator Chaney, Jamey Douglas. Douglas, who owns a construction company, stated that Chaney had called him the previous evening about some dirt work. Douglas told Chaney that he was in the middle of jury service and that a few jurors were using their cell phones during deliberations. Douglas stated, “I just didn’t think that was right.” Douglas further stated that he did not speak about the merits of the case with Chaney nor did he inform Chaney of the breakdown of the votes thus far.
¶ 5. In regards to some of the jurors using cell phones during deliberations, there was no testimony presented as to which jurors were on their cell phones, what they were discussing, when they used the cell phones or how long they might have been on their cell phones. Furthermore, at no time were the jurors instructed that they could not take their cell phones into the jury room. After hearing arguments concerning the motion for mistrial, the trial judge took the matter under advisement and also permitted the parties to submit briefs on the matter. Ultimately, the trial judge denied the motion, as well as a motion for a JNOV, finding that “[wjithout more on the content of [the communication between Chaney and Douglas or any alleged cell phone conversation], the Court cannot say that it is reasonably *977 possible any communications altered the verdict.”
¶ 6. The trial judge thoroughly considered this matter and found that mere speculation of jury influence was not enough to set aside the verdict. See Boyles v. State, 778 So.2d 144, 147 (¶ 6) (Miss.Ct.App.2000) (the mere possibility that the jurors may have been influenced by some extraneous matter is not enough to set aside a verdict). From the evidence in the record, we find that the trial judge did not abuse his discretion in its ruling. This issue is without merit.
II. DID THE TRIAL COURT ERR IN FAILING TO SUPPRESS BOTH THE OUT-OF-COURT AND IN-COURT IDENTIFICATION OF POWELL BY RED-DITT?
¶ 7. In his second issue on appeal, Powell argues that the trial court erred in failing to suppress both the out-of-court and in-court identification of Powell by Redditt. Powell contends that the two-person photographic line-up was impermis-sibly suggestive and thus tainted Redditt’s in-court identification. We note that these two photographs were never introduced into evidence.
¶ 8. In Thompson v. State, 483 So.2d 690, 692 (Miss.1986), our supreme court stated:
An impermissibly suggestive pretrial identification does not preclude in-court identification by an eye witness who viewed the suspect at the procedure, unless: (1) from the totality of the circumstances surrounding it, (2) the identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
In Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), the U.S. Supreme Court set out five factors to be considered in determining whether a lineup is impermissibly suggestive: (1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness’s degree of attention; (3) the accuracy of the witness’s prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation. In practice, Mississippi has tended to place a heavy burden on defendants who are contesting the propriety of a pretrial identification procedure. Brown v. State, 829 So.2d 93, 102 (¶ 18) (Miss.2002).
¶ 9. Officer Randy Lewis testified that he did not plan to show Redditt the usual line-up of six photographs because he did not think she would be able to identify Powell due to the fishnet stocking over his face. Powell argues that showing Redditt two photographs was impermissibly suggestive. However, according to Redditt’s testimony, she arrived at the station to give her statement and, while waiting at Officer Lewis’s desk, saw some photographs. During trial, Redditt testified to the following:
Redditt: And I reached — I looked over on his desk, and there were some pictures there. I just picked them up, looking at them.
Bonner [Prosecutor]: How many pictures were there?
Redditt: Two.
Bonner: Okay. Tell me what happened.
Redditt: I picked them up. There was another guy on top, and I looked at that, and I flipped it over and looked at the other one underneath it. And I looked at him and I told Randy then, I said, “Randy, this looks like the guy’s eyes.” And he said, “Well, how was his skin? Was it lighter or darker?” I said, “It *978 was light, sort of, about a shade or two lighter than the other guy.”
Bonner: Um-hum.
Redditt: And I looked at them. I didn’t even have to guess. “This is him, Randy.”
Bonner: Okay. Did he—
Redditt: And he said—
Bonner: Did he put two photographs down and say, which one is he?
Redditt: No. I picked them up myself.
Bonner: Okay.
Redditt: He didn’t ask me to identify them.
¶ 10. It is apparent from the record that Redditt had no doubts as to the identity of Powell. Redditt stood three feet away from Powell during the robbery and was able to give a good description of him to the police. Furthermore, Redditt testified that the first thing she noticed about Powell was his eyes. Redditt stated that she watched him take the money out of the register “because I thought his eyes — they were so pretty, and he was so young-looking. His skin was so smooth and young.” Redditt also stated that the fishnet stocking Powell had over his face consisted of a “big weave” and she “could see his face pretty good.”
¶ 11. We fail to find that Redditt’s identification of Powell from the photograph on Lewis’s desk or the process by which Red-ditt identified Powell from this photograph is so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. Even if we were to find Redditt’s out-of-court identification was suggestive, Powell confessed to the crime. See Dennis v. State, 904 So.2d 1134, 1136 (¶ 13) (Miss.Ct.App.2004). This issue is without merit.
III. DID THE TRIAL COURT ERR IN DENYING POWELL’S MOTION TO SUPPRESS HIS CON- ... FESSION?
¶ 12. In his third issue on appeal, Powell argues that the trial court erred in denying his motion to suppress his confession. The standard of review regarding the admissibility of a confession is as follows: this Court will reverse a trial court’s finding that a confession is admissible only when an incorrect legal standard was applied, manifest error was committed, or the decision is contrary to the overwhelming weight of the evidence. Stokes v. State, 797 So.2d 381, 383 (¶ 3) (Miss.Ct.App.2001). It is the State’s burden to prove beyond a reasonable doubt all facts prerequisite to admissibility of a confession. Walker v. State, 759 So.2d 422 (¶ 6) (Miss.Ct.App.1999). The State meets this burden and establishes a prima facie case by the testimony of an officer, or another person who has knowledge of the facts, that the confession was voluntarily made without any threats, coercion, or offer of reward. Cox v. State, 586 So.2d 761, 763 (Miss.1991). Furthermore, under Cox, once this burden is met, the defendant must provide evidence or testimony that the statement was not voluntary. Id. at 764.
¶ 13. At the suppression hearing, the State offered the testimony of several officers present during the interrogation as well as the audiotape of the confession. Officers Tom Wilson, Randy Lewis, and Mark Culbertson of the Vicksburg Police Department all testified that they did not threaten Powell, nor did they make promises to Powell in order to obtain his confession. Powell argues that these officers told him they would let his fiancee out of jail and that he might only get probation if he confessed. Officer Wilson was called to rebut statements made to Powell concern *979 ing his fiancee. Officer Wilson testified that at no time did anyone attempt to coerce Powell into confessing in exchange for releasing his fiancee from jail. There was ample testimony to support the volun-tariness of Powell’s confession. We cannot find any error by the trial court in allowing the jury to hear Powell’s confession. . This issue is without merit.
IV. DID THÜE TRIAL COURT ERR IN DENYING HIS PEREMPTORY INSTRUCTION AND SUBSEQUENT MOTION FOR A JNOV BECAUSE THE VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 14. In his fourth issue, Powell argues that the trial court erred in denying his peremptory instruction and motion for a JNOV because the verdict was against the overwhelming weight of the evidence. Powell claims to be challenging the overwhelming weight of the evidence, but his arguments clearly discuss the legal sufficiency of the evidence. “The standard of review for a denial of a directed verdict, peremptory instruction and a JNOV are identical.” Hawthorne v. State, 835 So.2d 14, 21 (¶ 31) (Miss.2003). All three challenge the legal sufficiency of the evidence. McClain v. State, 625 So.2d 774, 778 (Miss.1993). In reviewing the sufficiency of the evidence, all evidence supporting the guilty verdict is accepted as true, and the State must be given the benefit of all reasonable inferences that can be reasonably drawn from the evidence. Bell v. State, 910 So.2d 640, 646 (¶ 16) (Miss.Ct.App.2005). Furthermore, it is well-settled law that the jury determines the credibility of witnesses and resolves conflicts in the evidence. Evans v. State, 725 So.2d 613, 680-81 (¶ 293) (Miss.1997).
¶ 15. Notwithstanding an eyewitness’s identification, Powell confessed to the crime, and the jury was inclined to believe him. Taking the evidence in the light most favorable to the State, we find that there was sufficient evidence that Powell committed the armed robbery. This issue is without merit.
¶ 16. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF ARMED ROBBERY WITH A DEADLY WEAPON AND SENTENCE OF TWENTY YEARS WITH FIFTEEN TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH TBÍÉ REMAINDER SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
KING, C.J., MYERS, P.J., SOUTHWICK, IRVING, CHANDLER, GRIFFIS, BARNES,’"ISHEE AND ROBERTS, JJ., CONCUR!