# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-KA-01172-SCT

*LAQUNN GARY a/k/a LAGUNN GARY a/k/a*
*LAQUNN SHAROD GARY*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 05/22/2014 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| TRIAL COURT ATTORNEYS: | MICHAEL HENRY |
| | ALISON KELLY |
| | YEMI KINGS |
| | BRAD HUTTO |
| | GRETA HARRIS |
| | IVON JOHNSON |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: BENJAMIN ALLEN SUBER |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REMANDED WITH DIRECTIONS - 12/01/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


EN BANC.

MAXWELL, JUSTICE, FOR THE COURT:

¶1.     Before his capital-murder trial, Laqunn Gary moved to suppress his confession, arguing he had not knowingly, intelligently, and voluntarily waived his *Miranda* rights.[1] The trial court denied his motion without a hearing. This was error. Because Gary had questioned the voluntariness of his confession, he had a due-process right to a suppression hearing. And the State had the burden to prove his confession was in fact voluntary. We remand this case to the trial court to conduct a hearing to determine the admissibility of Gary's confession.

## Background Facts and Procedural History

### I.     Investigation

¶2.     On February 11, 2012, the Jackson Police Department (JPD) received a call about a dead body. Someone had found seventeen-year-old Vizavian Trent Darby lying in the grass with a gunshot wound to his head. Darby was last seen leaving home in his mother's rental car. Police found the abandoned car two days later.

¶3.     On February 14, 2012, JPD took Gary in for questioning. After advising him of his *Miranda* rights, Detectives Eric Smith and Patricia Wilder interviewed Gary. During this interview, Gary confessed to shooting Darby, abandoning the rental car, and hiding the gun he used to shoot Darby, as well as Darby's 9 mm pistol. After the interview, Gary led Detective Smith and another detective to the guns.

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966) (requiring that, prior to a custodial interrogation, the person be warned he has a right to remain silent, that any statement he makes may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed).

¶4.     Gary and his friend were indicted for capital murder for unlawfully killing Darby during the course of a robbery.[2] *See* Miss. Code Ann. § 97-3-19(2)(e) (Rev. 2014).

## II.     Pretrial

¶5.     While Gary was awaiting trial,[3] Detective Smith was killed. Detective Smith was interviewing a suspect in an unrelated case when that suspect grabbed Detective Smith's gun and shot him. Detective Wilder was in the interrogation room and witnessed her partner Smith's murder.

¶6.     Before his trial, Gary moved to suppress his written statement and confession. The thrust of Gary's argument was that he was only seventeen at the time and too immature to appreciate the constitutional rights he purportedly waived before the interview. With Detective Smith's death and unavailability as a witness in Darby's trial, the State subpoenaed Detective Wilder to testify. Specifically, the State intended to call Detective Wilder to testify at Gary's suppression hearing to show his confession was voluntary.

¶7.     But Detective Wilder did not want to testify. And an attorney she had retained to represent her in another matter moved to quash the State's subpoena. Detective Wilder's attorney argued she suffered from post-traumatic stress disorder (PTSD) from witnessing her partner's murder. And having to either watch and/or testify about Gary's recorded confession—which took place in the same or similar interrogation room where Detective Smith was shot—would damage her mental health. Detective Wilder's resistence to

---

[2] The pair were further charged with using a firearm during the commission of a felony, in violation of Mississippi Code Section 97-37-37 (Rev. 2014).

[3] For reasons unclear from the record, Gary was tried by himself.

3

testifying prompted the State to file a pretrial motion to determine her availability as a witness.

¶8.     On the Thursday before trial was set to begin on Monday, May 12, 2014, both the State's motion as well as Wilder's motion to quash the State's subpoena were brought for a hearing. At this hearing, Detective Wilder's therapist testified about Wilder's supposed PTSD and the potential harmful impact testifying might have on her.

¶9.     Both the State and Gary informed the court that Detective Wilder's potential unavailability would impact Gary's suppression hearing, since the State intended to call Detective Wilder to prove Gary's confession was voluntary and to authenticate the video-recording of the confession. Gary's counsel reminded the court about Gary's pending suppression motion, urging an age-based challenge to the voluntariness of his *Miranda* waiver. At this point, a disagreement arose about Gary's true age. While Gary's counsel asserted he was seventeen when he confessed, the State insisted Gary was in fact eighteen, based on his birth date. Though the current hearing was about Wilder's availability to testify—not the admissibility of Gary's confession—Gary's counsel offered to put Gary on the stand for the limited purpose of confirming the year he was born.

¶10.    From the stand, Gary testified he was born in November 1994, making him seventeen in February 2012. The trial court then permitted the State to cross-examine him about his age. The State showed Gary the *Miranda* waiver form and written statement, which listed his date of birth. Gary confirmed that he could read and write and that it was his signature on two of the pages. But he insisted the officers never asked him about his birthday. At this

4

point, the State asked to show the video confession, suggesting that within the first thirty seconds of the video statement, Gary told Detective Smith and Detective Wilder he was born in 1993—making him eighteen, not seventeen. Over Gary's objection, the trial court permitted several minutes of the video to be played—up to when Gary was asked about his date of birth. Gary confirmed that he was the person in the video, that the video depicted him being interviewed by the two detectives, and that he had told the detectives he was born in 1993.

¶11. After Gary's brief testimony, the hearing shifted back to the issue of Detective Wilder's availability to testify. The hearing ended with the trial court taking the issue of Detective Wilder's availability under advisement.

¶12. On the morning of trial, the court announced that it had deemed Detective Wilder an unavailable witness. The court also confirmed it was denying Gary's motion to suppress his written statement and video-recorded confession.[4] Gary's counsel spoke up, arguing she had not been heard on his motion to suppress. And though the court agreed with Gary's counsel that Gary "was not fully heard on his motions" to suppress the written statement and video-recorded confession, the court still ruled his confession was voluntary.

### III. Conviction

¶13. At trial, the video confession was introduced through Deputy Chief Brent Winstead, the third detective who had witnessed parts of Gary's interview and had been with Gary

---

[4] Apparently, the court had emailed the parties over the weekend, informing them of its decision on the two motions. So the pronouncement from the bench was to place in the record the court's rulings and reasoning.

when he led the police to the murder weapon. After hearing from multiple witnesses called by the State and defense, the jury found Gary guilty of capital murder. He was sentenced to life in prison without parole.

**Discussion**

¶14. Though Gary alleges several errors on appeal, we address only his first—the trial court's denial of Gary's motion to suppress his written statement and video-recorded confession.[5] At a minimum, Gary argues, he was entitled to a suppression hearing, in which the State was required to put on evidence to meet its burden to make a prima facie case that the confession was voluntary. We agree.

¶15. "When the voluntariness of a confession is put into question, the defendant has a due process right to a reliable determination that the confession was in fact voluntarily given." ***Cox v. State***, 586 So. 2d 761, 763 (Miss. 1991) (citing ***Stokes v. State***, 548 So. 2d 118, 121 (Miss. 1989)). To protect this right, we have held that "[w]hen objection is made to the introduction of the confession, the accused is entitled to a preliminary hearing" outside the presence of the jury "on the question of the admissibility of the confession." ***Agee v. State***, 185 So. 2d 671, 673 (Miss. 1966).

¶16. But here, as the trial court acknowledged, there was no suppression hearing. And because there was no suppression hearing, the State was never required to meet its burden to make a prima facie showing that Gary voluntarily had waived his ***Miranda*** rights and that

---

[5] Gary also claims the evidence was insufficient to convict him of capital murder and that his guilty verdict is contrary to the overwhelming weight of the evidence. He also broadly asserts "cumulative errors" require a new trial.

his confession was voluntary. *See Cox*, 586 So. 2d at 763. In fact, the State was not required to put on any evidence at all or call any witnesses about the voluntariness of his *Miranda* waiver or his statement. Instead, the trial court relied on evidence introduced through Gary—over his objection—to rule Gary's confession was admissible. This was error, since the State "bears the burden of proving all facts prerequisite to admissibility [of a confession] beyond a reasonable doubt." *Id.* And only after the State makes its prima facie case does the defendant have to put on evidence of coercion or involuntariness. *See Agee*, 185 So. 2d at 673, *as modified by Thorson v. State*, 653 So. 2d 876, 888 (Miss. 1994).

**Conclusion**

¶17. Because the court did not require the State to make a prima facie showing that Gary's confession was voluntary, we have no option but to remand this case to the trial court to hold a suppression hearing to decide if Gary's confession was indeed admissible. *See Jackson v. Denno*, 378 U.S. 368, 394, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964) (remanding to the state court to conduct a constitutionally adequate suppression hearing); *see also Conerly v. State*, 760 So. 2d 737, 742 (Miss. 2000) (remanding burglary case to the trial court for a probable-cause hearing, because no probable-cause determination had been made before admitting evidence found during the defendant's arrest). If, upon remand, the trial court determines Gary's confession is inadmissible, then the trial court shall vacate his conviction and order a new trial. *See Conerly*, 760 So. 2d at 742. If the trial court finds Gary's confession was in fact admissible, it shall enter an order to that effect. *See id.*; *see also Jackson*, 378 U.S. at 394, 84 S. Ct. at 1790, 12 L. Ed. 2d 908 (finding that, if after a proper suppression hearing,

7

the confession is found to be voluntary and admissible, there is "no constitutional necessity at that point for proceeding with a new trial").

¶18. **REMANDED WITH DIRECTIONS.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., LAMAR, COLEMAN AND BEAM, JJ., CONCUR. KITCHENS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KING, AND COLEMAN, JJ.**

**KITCHENS, JUSTICE, SPECIALLY CONCURRING:**

¶19. I concur with the majority's holding that, because the trial court did not require the State to present a *prima facie* case that Gary's confession was voluntary and that he knowingly, intelligently, and voluntarily waived his *Miranda*[6] rights, the trial court erred by admitting the video recording of Gary's confession and his written statements. I write separately to address the clear Fifth Amendment violation that occurred when Gary was compelled to give evidence against himself by authenticating the video recording of his own statement and his own written statements.

¶20. "One of the most settled premises in our constitutional jurisprudence is that no individual may be compelled to testify against himself or to offer testimony which might render him liable to a criminal prosecution." *Moore v. Moore*, 558 So. 2d 834, 836 (Miss. 1990). The Fifth Amendment to the United States Constitution provides that no person shall be compelled to be a witness against himself. U.S. Const. amend. V; U.S. Const. amend XIV. And, under Article 3, Section 26, of our state constitution, the accused cannot "be compelled to give evidence against himself." Miss. Const. art. 3, § 26. Under the Fifth Amendment, "[a]

---

[6] *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

defendant is protected not merely from being placed on the witness stand and compelled to testify to his version of the matters set forth in the indictment; he is protected from authenticating by his oath any documents that are sought to be used against him . . . ." *Haywood v. United States*, 268 F. 795, 802 (7th Cir. 1920).

¶21. The accused may assert the privilege against self incrimination on a question-by-question basis or refuse to take the witness stand at all. *Knapp v. State*, 536 So. 2d 1330, 1334 (Miss. 1988). A defendant can waive the right against self incrimination by voluntarily and knowingly taking the witness stand and responding to questions. *Hentz v. State*, 496 So. 2d 668, 673 (Miss. 1986). But no waiver occurs if the defendant's counsel timely objects to questions that would elicit incriminating information. *Moore*, 558 So. 2d at 838.

¶22. What occurred in this case starkly contravened these basic principles. Gary filed a motion to suppress his statements and a motion to suppress the videotape of his interrogation. The State bears the burden of proving that a confession is voluntary and admissible. According to the procedure for determining the voluntariness of a confession set out in *Agee v. State*, 185 So. 2d 671, 673 (Miss. 1966), the State makes a *prima facie* case of admissibility by presenting testimony that the confession was voluntary. *Id.* Once the State makes a *prima facie* case, the burden shifts to the defendant to make specific allegations of coercion. *Id.* Then, the State can offer rebuttal testimony. *Id.*

¶23. As discussed in the majority opinion, no formal suppression hearing occurred in this case. Instead, in its ruling, the trial court pieced together facts gleaned from other preliminary proceedings to support the denial of the motions to suppress. The first such preliminary

9

proceeding was the May 8, 2014, hearing on the State's motion to determine the availability of Patricia Wilder, one of the two officers who took Gary's statements; the other officer, Eric Smith, was deceased.

¶24. At this hearing, defense counsel argued that, if Wilder was deemed unavailable due to her post-traumatic stress disorder, the trial court should suppress Gary's statements because the State could not make out a *prima facie* case that the statements were voluntary and that Gary's **Miranda** waiver was knowing, intelligent, and voluntary. Thus, defense counsel argued, the availability determination was "critical" to the motions to suppress. Defense counsel argued that, if Wilder was declared unavailable, the trial court must categorically grant the motions to suppress.

¶25. Defense counsel also asserted that, without testimony from the officers, the State would be unable to authenticate the videotaped confession. The following colloquy occurred:

> BY MS. KELLY: . . . . So there's a suppression of the videotape on the basis of the insufficient warning, but further, without Detective Wilder's testimony, the State cannot possibly authenticate the videotape because the only three people connected to the videotape were Detective Eric Smith, Detective Wilder and Mr. Gary. *Mr. Gary is certainly not going to abandon his 5th Amendment right of self-incrimination to authenticate the very tape that would be used against him*.
>
> BY THE COURT: Ms. Kelly, what's your client's date of birth? What's his date of birth?
>
> BY MS. KELLY: I'm going to have to ask him, sir. I know it, but I don't have it with me. 11/19/94.
>
> BY THE COURT: 11/19 of '94?
>
> BY MS. KELLY: Yes, sir. I'm sorry. 11/9 of '94. He was 17 at the time. He's no longer 17. He's been locked up for several years now.

10

(Emphasis added.) The State averred that its records showed Gary's birthday was November 9, 1993, which would have meant that he was eighteen years old at the times of the crime and the interrogation. Defense counsel then stated: "I just clarified with my client. For the very limited purpose of the [c]ourt ascertaining his correct birthday, he will – I will allow him to answer the [c]ourt under oath as to his birth date." The State requested limited cross examination of Gary as to his birth date. Defense counsel agreed, "[s]o long as the limited cross-examination deals with the date of birth only."

¶26. Accordingly, Gary, after being sworn, testified that his correct birth date was November 9, 1994. On cross examination, the State asked Gary if, during his interrogation, he had informed the detectives that he was born in 1993. Gary denied that the detectives had asked him about his birthday. The State then asked if Gary had signed and initialed his *Miranda* rights waiver form and his written statements. At this point, these documents were marked for identification only. Gary agreed that he had signed the waiver form and one of the statements, but he denied having initialed the statement. The State also elicited Gary's testimony that he had an eighth grade education and could read and write. Defense counsel objected that this questioning was beyond the scope of Gary's birth date.

¶27. Then the State informed the trial court that Gary had stated his birth date on the videotaped recording of his confession. The State requested to publish the recorded interview, and defense counsel objected. The trial court overruled the objection and allowed a portion of the videotape to be played. When the recording was played, the State elicited

11

Gary's testimony that he was the person on the videotape, and that the videotape was a recording of his interview. Again, defense counsel objected.

¶28.    Before the trial began on May 12, 2014, the trial court informed the parties of its finding that Wilder was unavailable and of its denial of the motions to suppress.[7] The trial court stated that, based on its review of Gary's videotaped statement, the State had made out a *prima facie* case of voluntariness. Defense counsel argued that, because the State had presented no testimony, no *prima facie* case had been made. Defense counsel argued that the trial court's viewing of the videotape had been for the limited purpose of determining Gary's age, not for the purpose of ruling on the motions to suppress. Defense counsel requested that the trial court either grant the motions to suppress or continue the case until Wilder became well enough to testify, enabling State to establish a *prima facie* case. The State argued that the trial court had sufficient information to rule on the motion to suppress based on Gary's testimony as to his age and education level, and his authentication of the videotaped confession. Defense counsel responded that "without Detective Wilder, they simply can't authenticate the statement or the tape without Mr. Gary's waiving his Fifth Amendment rights, which he will not do at this point."

¶29.    The trial court denied the motion for a continuance, finding that "the **Miranda** waiver was signed and initialed various times by the defendant. The defendant acknowledged signing the waiver during the video statement, and the defendant confirmed during the video statement that he had not been threatened or coerced to give the statement at issue." In an

---

[7] The trial court already had provided the parties with informal notice of these rulings by email.

order entered after Gary's sentencing, the trial court expounded on its reasoning for denying the motion to suppress. Concerning the fact that the State had presented no evidence, the trial court stated:

> The totality of the circumstances approach supports this [c]ourt's finding that the evidence presented by the parties during the May 8, 2014[,] hearing was sufficient to find that the State made the necessary prima facie case. The defendant verified under oath that he initialed and signed the *Miranda* waiver. The defendant confirmed under oath that he was [the] interviewee in the videotape. Although the recitation of the defendant's *Miranda* rights were [sic] not made on the videotape, Detective Smith and the defendant confirmed on at least two different occasions during the tape that the *Miranda* warnings were given to the defendant, he understood these rights, and that he was not threatened or coerced into giving the statement. Notably, the [c]ourt found very persuasive that throughout the videotape, both the detectives *and* the defendant were calm, collected, and rational. Due to the aforementioned circumstances, among others, the [c]ourt did not require testimony to establish the prima facie case of voluntariness.

(Emphasis in original.) Having found that the State had made its *prima facie* case, the trial court went on to find that Gary had not presented any evidence that his confession had been coerced. The trial court found from the "totality of the circumstances" that Gary's *Miranda* waiver had been knowing, intelligent, and voluntary, and that his confession was not the result of coercion.

¶30.     The majority correctly holds that, because the State did not make out a *prima facie* case, the trial court erred by weighing the evidence. But what occurred in this case also implicated Gary's right against self incrimination. After conferring with Gary, defense counsel permitted him to take the stand to testify about his birth date and to answer questions on cross examination limited to his birth date. When the State's questions veered away from the subject of Gary's birth date, defense counsel objected. Defense counsel also

contemporaneously objected on Fifth Amendment grounds to the State's elicitation of Gary's authentication of the videotaped recording and written statements. While Gary's waiver did expose him to the State's use of his prior inconsistent statements to impeach his direct testimony about his age, defense counsel's objections make clear that his waiver did not extend to authentication of the videotaped recording and written statements for use as substantive evidence against him. The trial court's overruling of those objections forced Gary to incriminate himself by authenticating the evidence against him, in clear violation of the Fifth Amendment of the United States Constitution and Article 3, Section 26, of the Mississippi Constitution. Simply put, Gary was forced to give evidence against himself, in violation of one of our most basic tenets of constitutional law. Even without the gross mishandling of the suppression motions, this error alone would warrant reversal.

¶31.　I agree that this case must be remanded for the trial court to hold a suppression hearing to determine whether Gary's confession was admissible. This case is distinguishable from *Keller v. State*, 138 So. 3d 817 (Miss. 2014), in which I dissented. In *Keller*, I wrote that the majority erroneously entered an order that reopened a suppression hearing to permit the State to put on additional evidence. In my opinion, that order impermissibly gave the State a second opportunity to adduce testimony that the accused's confession was voluntary. *Keller*, 138 So. 3d at 878 (Kitchens, J., dissenting). Unlike *Keller*, in this case, because no suppression hearing occurred, neither the State nor the defense had an opportunity to present any evidence. Therefore, this Court appropriately remands to the trial court with instructions to hold a suppression hearing. If the trial court finds that confession was admissible, no new

14

trial is required. *Jackson v. Denno*, 378 U.S. 368, 395, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964).

**DICKINSON, P.J., KING AND COLEMAN, JJ., JOIN THIS OPINION.**